RECEIVED
FEB 14 2012
U.S.D.C.X S.D.N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

GUAN N., a minor under the age of 21 years, by her father :    JUDGE RICHARD J.
DAVID L.; YOU G., a minor under the age of 21 years, by :    HOLWELL
his mother, JUAN H.; on behalf of themselves and all others :
similarly situated; and PARENTS FOR CHILDREN FIRST :    11-CV-04299 (RJH)
                                           :
                       Plaintiffs, and :    ECF CASE
                                             :
LING LING CHOU,                        :
                                             :    **INTERVENOR'S**
              Intervening Plaintiff :    **FIRST AMENDED**
                                             :    **COMPLAINT**
-against-                                        :
                                             :
NEW YORK CITY DEPARTMENT OF EDUCATION, DENNIS :
WALCOTT, as Chancellor of the New York City Department of :
Education, JAMEL BOYER, individually and in his capacity as an :
agent and employee of the New York City Department of :
Education, AJAIYEOBA TEJUMADE, individually and in her :
Capacity as an agent and employee of the New York City :
Department of Education, LYNN BERAT, individually, :
EDWARD PRIMUS, individually, and the ESTATE OF :
SAULTAN BAPTISTE                                :
                                             :
                       Defendants. :

------------------------------------------------------------ X

        Plaintiff Ling ling Chou, by her attorneys, Beldock Levine & Hoffman LLP, as and for

her complaint against the New York City Department of Education and all defendant parties,

alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil rights action in which the plaintiff, LING LING CHOU, seeks relief for

        defendants' violations, under color of state law, of her rights, privileges and immunities

        secured by the Civil Rights Act of 1871; 42 U.S.C. §1983; the Fifth and Fourteenth

Amendments to the United States Constitution; the Constitution of the State of New

York; 42 U.S.C. §1981; 42 U.S.C. §1985; Title VII of the Civil Rights Act of 1964, New

York City Human Rights Law, and New York State statutory, administrative and

common law.

2.   Plaintiff is the former Principal of PS 184M, the Shuang Wen School (hereinafter

"Shuang Wen"). This school is under the direct control of the NEW YORK CITY

DEPARTMENT OF EDUCATION (hereinafter "DoE"), which receives federal funding

to operate New York City schools. The DoE "reassigned" plaintiff to administrative

duties on or about July 1, 2011.

3.   Defendants, the NEW YORK CITY DEPARTMENT OF EDUCATION; DENNIS

WALCOTT, Chancellor of the New York City Department of Education; JAMEL

BOYER, employee of the New York City Department of Education; AJAIYEOBA

TEJUMADE, employee of the New York City Department of Education; LYNN

BERAT, parent of student(s) at Shuang Wen; EDWARD PRIMUS, parent of former

student(s) at Shuang Wen; and the ESTATE OF SAULTAN BAPTISTE, representative

of now deceased parent of student(s) at Shuang Wen, acting individually and, as the case

may be, in their official capacities, jointly and severally, did cause plaintiff LING LING

CHOU to be subject to, *inter alia*, deprivation of due process, deprivation of equal

protection, discrimination on the basis of race in violation of 42 U.S.C. §1981, conspiracy

to deprive plaintiff of the equal protection of the law, intentional discrimination on the

basis of race, color, religion, and/or national origin, negligent and intentional infliction of

emotional distress, and defamation. Defendants did cause damage to plaintiff's name,

2

career, and reputation; mental and emotional distress; embarrassment; pain and suffering; deprivation of plaintiff's interest in her employment, profession, and position as Principal of Shuang Wen School; and her financial loss.

4.      Plaintiff seeks (i) a declaratory judgment that her removal from her position as Principal of Shuang Wen was a violation of her rights to Due Process and Equal Protection; (ii) injunctive relief enjoining further violations of the rights of plaintiff, (iii) injunctive relief ordering defendants to immediately reinstate plaintiff to her position of Principal of Shuang Wen, and enjoining defendants from continuing to terminate, suspend, reassign or otherwise remove plaintiff from her position as Principal of Shuang Wen on the basis of the "investigations" that were opened prior to her removal and/or "investigations" currently being pursued by the DoE and related offices regarding Shuang Wen; (iv) injunctive relief requiring defendant DoE to promulgate and adhere to reasonable guidelines for the conduct and completion of future investigations; (v) injunctive relief ordering the defendants, including DoE and all its employees and officials, to cease and desist making false accusations and statements regarding plaintiff to the public, via the press or otherwise; (vi) compensatory damages for the injuries caused by the illegal actions of the defendants; (vii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (viii) such other and further relief, including costs and attorneys fees, as this Court deems equitable and just. In bringing the foregoing claims for injunctive relief, plaintiff alleges that she, like the students and parents of Shuang Wen and the school itself, has been and will in the future be irreparably harmed by her continued unwarranted removal from her position as Principal

of Shuang Wen and ongoing efforts by the defendants to adversely affect and dismantle the English/Mandarin bilingual/bicultural teaching methods and programs established under the leadership of Ling ling Chou at Shuang Wen.

## JURISDICTION

5.   Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

6.   Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7.   Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

8.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to the intervening plaintiff's and other plaintiffs' claims have been and are taking place. The discriminatory and illegal actions taken by the DoE, which is a New York City agency and is located in New York City, relate to Shuang Wen, a school located in New York City in Manhattan.

## JURY DEMAND

9.   Plaintiff demands a trial by jury in this action on each and every one of her claims for which jury trial is legally available.

## THE PARTIES

10.     Plaintiff, LING LING CHOU, is a citizen of the United States, who is and was at all times relevant to this complaint a resident of Queens County, City and State of New York.

11.     Defendant NEW YORK CITY DEPARTMENT OF EDUCATION (DoE) is authorized by the City of New York to operate the New York City public school system, of which Shuang Wen is a part.

12.     Defendant DENNIS WALCOTT is and was, at various times relevant to this complaint, the Chancellor of the DoE and successor to the prior Chancellor, who was in office at earlier relevant times; and as such defendant Walcott controls and oversees the DoE.

13.     Defendant JAMEL BOYER is and was, at all times relevant to this complaint, employed as a Confidential Investigator with the DoE's Office of Special Investigations ("OSI"), and as such, participated in at least some of the investigations that, according to the DoE, resulted in the removal of the plaintiff from her position as Principal of Shuang Wen, and that, as asserted by plaintiff, caused harm to her and Shuang Wen, and the school's students and their parents, by wrongful conduct.

14.     Defendant AJAIYEOBA TEJUMADE was, at all times relevant to this complaint, employed by the DoE, and as such, upon information and belief, participated in wrongful investigatory conduct.

15.     Defendants WALCOTT, BOYER and TEJUMADE are referred to collectively herein as the "Individual DoE Defendants."

5

16.     Defendant LYNN BERAT is and was, at all times relevant to this complaint, the parent of approximately seven students who were enrolled at Shuang Wen at various points, and is responsible for at least some of the wrongful complaints that resulted in the above mentioned investigations by the DoE and related offices, as well as other misconduct against plaintiff.

17.     Defendant EDWARD PRIMUS was, at all times relevant to this complaint, the parent of one former student of Shuang Wen, and is responsible for at least some of the wrongful complaints that resulted in the above mentioned investigations by the DoE and related offices, as well as other misconduct against plaintiff.

18.     Defendant ESTATE OF SAULTAN BAPTISTE is the estate of SAULTAN BAPTISTE, an individual now deceased who was the parent of approximately three students who are and were enrolled at Shuang Wen, and is responsible for at least some of the wrongful complaints that resulted in the above mentioned investigations by the DoE and related offices.  The Estate is represented by Sabrina Baptiste, wife of the late Saultan Baptiste.

19.     Defendants BERAT, PRIMUS, and SAULTAN BAPTISTE, whose estate is named as a defendant in this action, are referred to collectively herein as the "Parent Defendants."

20.     At all times relevant herein, defendants DENNIS WALCOTT, JAMEL BOYER, and AJAIYEOBA TEJUMADE acted under color of law in the course and scope of their duties and functions as agents, employees, servants and/or officers of the DoE in engaging in the conduct described herein.

21.     At all times relevant herein, defendants DENNIS WALCOTT, JAMEL BOYER, and AJAIYEOBA TEJUMADE, have acted for and on behalf of the DoE, and incidental to

6

the authorized pursuit of their duties as officers, agents, employees, and/or servants of the DoE.

## COMPLIANCE WITH GENERAL MUNICIPAL LAW

22.     Plaintiff served her notice of claim upon the City of New York and upon defendant DoE on September 28, 2011, within 90 days of the events giving rise to plaintiff's claims, and has otherwise complied with the statutory requirements of the General Municipal Law of the State of New York.

23.     This action was filed within a year and 90 days of the events giving rise to plaintiff's claims.

## STATEMENT OF FACTS

24.     Plaintiff LING LING CHOU holds a B.A. from Fu Jen Catholic University, an M.A. in French literature from Sam Houston State University, a Masters Degree in Education from Hunter College in New York City, and an administrator's certificate from Baruch College. Prior to her employment at Shuang Wen, she served as Director of Mei Wah Day Care Center in Chinatown and Executive Director of Chinatown Day Care Center. She also worked as a Mandarin Chinese Instructor at Pace University, volunteered to teach 5th and 6th grade students Chinese at the Chinese School at Fordham University in the Bronx, and was a teacher of general studies at P.S. 130 in District 2 on Baxter Street in Little Italy.

25.     Plaintiff was recruited by the not-for-profit Shuang Wen Academy Network ("SWAN") in 1996 to act as Director of the Shuang Wen School. She later became Assistant Principal and then Principal.

26.     Shuang Wen was established in 1998 by a group of concerned members of the Chinatown community who had formed SWAN, pursuant to a proposal for the School to New Visions for Public Schools, which had been approved by the DoE.

27.     From its inception, Shuang Wen was a unique English and Mandarin learning and speaking elementary/middle school, with a high level of bilingual/bicultural instruction. From its modest beginnings in 1998 with two Kindergarten classes of 42 students, it had evolved by 2010-2011 to a school which had close to 700 students from pre-K through 8th grade, with 27 classes, 42 teachers and many supporting staff.

28.     Throughout its existence, Shuang Wen supplemented its traditional school day with daily after-school and summer school Mandarin Chinese language and cultural teaching programs. These programs were attended by all students from 1998-June of 2010 (when they were free to students), and were attended by the large majority of students from June 2010 forward.

29.     Shuang Wen is a Title I school. Throughout its history, close to and sometimes over 70% of the School's students have lived at or below the poverty line and qualified for free or reduced cost lunches.

30.     Shuang Wen is generally ranked among the top achieving schools in New York City, among the top ten schools in terms of scores on New York State tests.

31.     In 2008, Shuang Wen became a Blue Ribbon school, a prestigious federal government award for a Title I school that excelled in school children's academic achievements.

32.     Over 90% of Shuang Wen's students generally achieve high scores on all levels of state-wide testing.

8

33.     Since the first graduating 8th grade class class in 2007, a high percentage Shuang Wen students have secured admissions to specialized New York City high schools. Seventy percent of the June 2011 8th grade students at Shuang Wen secured such admissions.

34.     Under the Department's recently issued annual school report card ratings for the 2010-2011 school year, Shuang Wen had the highest overall score in Manhattan, followed closely behind by the Upper West Side's gifted and talented The Anderson School and Union Square New York City Lab Middle School for Collaborative Studies.

35.     Shuang Wen has achieved its high ratings and success for its students despite the fact that it is significantly underfunded in relation to other schools in its district and in relation to other schools who have similar high scoring ratings in Manhattan.

36.     Among the reasons for Shuang Wen's success in educating its students are a capable and dedicated teaching and administrative staff and many parents who have been regularly involved, without limitation, in fundraising and school related activities, including the after school and summer school programs, and two special annual events: the Lunar New Year celebration and related student performances and the annual China trip for 8th grade graduates, which began in 2007.

37.     Shuang Wen has been a highly successful academic institution under the leadership of Ling ling Chou.

38.     On July 1, 2011, plaintiff was unexpectedly removed as Principal and barred from the School premises.

39.     After thirteen years of service at Shuang Wen, plaintiff was given one hour to gather her personal belongings and leave the school.

9

40.    Plaintiff was then "re-assigned" to an unproductive and demeaning daily round of "administrative duties" at a DoE office.

41.    Upon information and belief, prior to plaintiff's removal from her position, false and defamatory allegations against plaintiff and/or Shuang Wen were communicated to the DoE by a very small number of parents of Shuang Wen students, including defendants BERAT, PRIMUS, and the now deceased SAULTAN BAPTISTE.

42.    Upon information and belief, on or about and between 2009 and 2010, PRIMUS and BAPTISTE told a parent with whom they were acquainted that they were filing numerous complaints about Principal Chou, whom they wanted to "destroy." PRIMUS told the parent that he had been sending complaints by fax several times daily. BAPTISTE told the parent that he had been "consistently" filing complaints and helping others to do the same.

43.    Information gleaned from members of the DoE's Office of Special Investigations ("OSI"), including defendant BOYER, during an interview of plaintiff by BOYER and other member(s) of OSI on or about Thursday, December 8, 2011, demonstrates that defendant BARAT made false and defamatory allegations against plaintiff to DoE. For example, during the interview defendant BOYER presented plaintiff with an e-mail that had been forwarded from BERAT to BOYER and questioned plaintiff about the e-mail's contents. BOYER also questioned plaintiff about alleged communication(s) between BERAT and plaintiff regarding conflict of interest; plaintiff asserts that the described communication(s) never occurred. During the interview BOYER told plaintiff that he had interviewed BERAT and questioned plaintiff about false allegations made by BERAT

including, *inter alia*, false accusations by BERAT that plaintiff had invited students who lived out of the district to attend Shuang Wen.

44. Upon information and belief, the Parent Defendants were motivated, in whole or in part, by their dissatisfaction with the majority Chinese and Asian school population, aspects of the after-school and summer school Mandarin programs, and the leadership of plaintiff as a person of Chinese national origin and Asian race.

45. The Parent Defendants who made said allegations were not themselves of Chinese origin or Asian race.

46. The Parent Defendants have demonstrated by their actions and/or statements that anti-Asian hatred is one of the motivating factors underlying their false and defamatory complaints to the DoE, by actions including but not limited to the following:

    a. In or about March 2009, PRIMUS accused the two Chinese-American Parent Association Co-Presidents of stealing money and taking kickbacks because they had chosen a Chinatown-based printing company to produce a program for the Lunar New Year event over the printing company PRIMUS recommended.

    b. In or about May 2009, PRIMUS sent an e-mail to DoE officials accusing Ms. Chou of racism and referring to her and her "gang of four."

    c. In or about October 2009, BERAT told a Chinese-American parent that "Chinese people don't think. They are incapable of thinking."

    d. In or about April 2010, an anonymous email was sent to the school's parent volunteers accusing Ms. Chou of influencing parents' responses to a DoE survey. The message echoed BERAT's prior statement that Chinese people

11

are "incapable of thinking," and photographs appended to the email were taken by PRIMUS. The message was signed "John John," a traditional derogatory term for Asian men.

e. Other anonymous messages were sent electronically or left at locations around the school signed by "Zero;" these messages threatened Ms. Chou and contained racially offensive comments and mock Chinese syntax. The messages bear characteristics that strongly suggest authorship or co-authorship by PRIMUS. One of these letters predicted the removal of Principal Chou.

47.   After receiving complaints from these few dissatisfied parents, the DoE and related bodies, including the Department's Office of Auditor General ("OAG"), the Department's Office of Special Investigations ("OSI"), and the City's Special Commissioner of Investigation ("SCI"), a body independent of the DoE, began various investigations related to Shuang Wen School.

48.   Upon information and belief, at least some of the issues investigated centered on allegations made by several of the Parent Defendants related to plaintiff's national origin and race based on her status as a Chinese and Asian Principal of a school with a majority Chinese and/or Asian student body.

49.   Upon information and belief, these claims included, without limitation, false claims that plaintiff was improperly admitting Chinese and/or Asian students in preference to students of other races; false claims that the after-school and summer school Mandarin language program was improperly funded; false claims of financial improprieties related to the General School Fund (GSF) and separate funds maintained by the Parents'

Association and SWAN, and related to contributions made by parents and foundations for student and school related student activities; and false claims of the falsification of school attendance records, believed to be focused on the date of the celebration of the Chinese Lunar New Year in 2011.

50. Upon information and belief, the above described investigations, most particularly as to alleged financial improprieties, are the main reason provided by the DoE for the removal of plaintiff as Principal of Shuang Wen School.

51. Plaintiff has cooperated with all inquiries made of her by DoE and its related bodies and by the SCI and OSI in regard to any and all investigations.

52. Investigations related to questions about whether there was misappropriation or misspending of funds in Shuang Wen's General School Fund (GSF) bank accounts, and related questions about financial interactions with separate funds maintained by the Parents' Association and SWAN, should be and should have been resolved with findings favorable to the plaintiff. There is no merit to claims of misappropriation of funds.

53. Plaintiff and her counsel attended a recorded interview regarding Shuang Wen's finances with the Special Counsel of SCI on August 4, 2011.

54. After attending the August 4, 2011 interview, plaintiff provided to the SCI through her counsel two general ledgers for the fiscal years involved in the OAG's investigations with extensive related documents.  Those documents were prepared by Simon Wen, CPA, with the assistance of others, including parents who were knowledgeable about and had been involved in maintenance of the General School Fund. Those documents demonstrate that all funds were properly maintained, that no funds were misappropriated, and that no misconduct was involved.

13

55.     Plaintiff also provided to the SCI on October 7, 2011, through her attorneys, a detailed
        report from a forensic accounting firm, Israeloff, Trattner & Co., P.C., concerning that
        firm's review of the 2009/2010 general ledgers and various supporting documents. That
        report concluded that although there had been certain procedural deficiencies in the
        maintenance of the GSF, there was no misappropriation of funds and no misconduct
        involved.

56.     On November 30, 2011, SCI issued its findings concerning matters that had been referred
        to SCI from OAG, including matters regarding transfers of money between the SWAN
        account and the PA account, funding for the 2010 eighth grade trip, and various other
        alleged financial improprieties. The SCI report concluded that "we did not find any theft
        of funds…" and that "no school funds for the 2008-2009 school year appear to be
        missing and no deliberate misconduct occurred…." Though SCI concluded that some
        practices in the management of the GSF, PA account and/or SWAN fund "violated either
        a Chancellor's regulation or standard operating procedures," it noted that "[m]any of
        these practices were either accepted or overlooked by the Department of Education," and
        recommended that DoE "provide financial accountability training and assistance to the
        school and PA respectively so that each can operate in compliance with the relevant
        procedures and regulations." Notably, the SCI report stated that "[f]rom 1998 until 2008
        no one--neither the parents nor anyone from the DOE--complained to SCI about alleged
        misconduct by the principal at PS 184," and noted that starting in 2008, "one faction of
        vocal parents made steady complaints about SWAN…the PA, and Ling ling Chou, the
        former principal." The SCI report did not recommend removal of Ling ling Chou from

14

her position as principal, and specifically noted that the removal of Ms. Chou from her position as Principal was "not...a result of the investigation conducted by this office."

57. Any allegations of improper enrollment practices are also unsupportable. The population of Shuang Wen is and has been determined by a lottery process conducted through two DoE offices since at least 2006. Plaintiff has no participation in or control over that lottery process.

58. Any allegations of falsified attendance records are also meritless. To the extent that such allegations relate to the date of the Lunar New Year, plaintiff was advised over the years by the DoE that it was permissible to allow students, after they had spent an appropriate amount of time in regular studies that day, to leave school to be involved in Lunar New Year events with their families; and that teachers were nonetheless permitted to mark students as being present. No records were ever falsified.

59. The investigations by DoE and its related bodies have been going on now for over two years with no conclusion in sight.

60. Although the evidence, including a report from the very agency to which DoE referred this matter, demonstrates that there was no wrongdoing, DoE's investigations remain open, and Ms. Chou remains on "administrative duties."

61. DoE officials have conspired with the Parent Defendants to remove Ms. Chou from her position as Principal. Throughout the investigation of the allegations made by the Parent Defendants, DoE has repeatedly relied on the Parent Defendants' assertions even when those assertions were or are in conflict with the DoE's own observations. For example:

    a. Although the May 2010 annual Parent Association election was overseen by Defendant TEJUMADE, as the Manhattan Borough Director of DoE's OFEA,

and TEJUMADE approved the result of the election, TEJUMADE supported

allegations made by BAPTISTE in September 2010 in which BAPTISTE

claimed the May 2010 election was rigged.

b. When BAPTISTE AND PRIMUS challenged a valid $81,000 transfer from

the Parent Association fund to the SWAN fund as illegal, DoE officials

openly sided with BAPTISTE AND PRIMUS without conducting

independent investigation, and effectively deputized BAPTISTE and PRIMUS

by allowing them to lead a meeting with a DoE official and incoming Parent

Association members regarding the transaction.

c. On or about June 24, 2011, Defendant TEJUMADE allowed BERAT,

BAPTISTE AND PRIMUS to raid the files of the PA file room, without any

members of the Parent Association present to oversee the "inspection."

TEJUMADE left the building after the search had begun, leaving the PA room

in the hands of the unsupervised Parent Defendants.

d. In or about March 2011, PRIMUS revealed to a parent that defendant BOYER

had assured him that Principal Chou would be fired. PRIMUS stated that

BOYER had promised that Chou would not be at the School in the fall, that

the "ball" was "already in motion," and that everything that occurred in the

interim was "just procedure." Family members of BAPTISTE also claimed to

have learned the same from BOYER.

62.  The collaboration of DoE officials with the Parent Defendants reveals the institutional

animus of DoE against a predominantly Asian school led by a woman of Chinese descent

who emphasizes a bilingual and bicultural education model.

16

63.    The manner in which DoE conducted investigations of the school and Ms. Chou also reveals the institutional animus of DoE as described above. For example, DoE officials removed children from class during the school day to question them about their participation in the Lunar New Year performance--a voluntary event tied to a holiday that is extremely important to the Chinese Culture.

64.    The ongoing investigations involve and involved constant disruptions of students, teachers, and plaintiff. Investigators came to the school repeatedly and almost always unannounced, creating a hostile work environment for plaintiff and harm to the plaintiff, school, staff, and students.

65.    There has been no finding that plaintiff had committed any kind of wrongdoing.

66.    There is no justifiable basis for any finding that plaintiff had committed any kind of wrongdoing.

67.    There was no justifiable basis for plaintiff's removal as Principal, and is no justifiable reason for plaintiff's continued removal as Principal.

68.    Since plaintiff's removal as Principal of Shuang Wen, upon information and belief, persons within the DoE have been making efforts to dismantle Shuang Wen's bilingual/bicultural procedures and teaching methods with the goal of discouraging Chinese parents and students from continued involvement with the school.

69.    For example, upon information and belief, the DoE seeks to eliminate the unique Social Studies program previously taught from 2nd through 5th grade, in which students learned comparative Chinese and U.S. Social studies in a collaboratively designed sequential learning curriculum, and classes were taught in Chinese.

70.   For another example, upon information and belief, educational and cultural field trips have been denied to the children since Ms. Chou's removal.

71.   For another example, upon information and belief, the DoE and its agents have purposely made it more difficult for SWAN to administer the Mandarin-language after-school program by i) denying SWAN's customary long-term permit to operate its program in the school building and granting only a month-to-month permit; ii) denying its teachers and administrators use of certain school facilities that they had previously customarily used; and iii) denying SWAN's educational director a parking permit, though there are permits available and he had previously been provided with one, forcing him to wait in his car between 8:00 a.m., when he drops off his children at the school, and 9:30 a.m., when street parking is permitted, in order to park his car on the street and enter the building to perform his work responsibilities.

72.   In addition, since plaintiff's removal as Principal of Shuang Wen, upon information and belief, persons within the DoE have been making efforts to dismantle Shuang Wen's extraordinary bicultural community. For example in 2012, for the first time in thirteen years, the school did not produce its traditional evening Lunar New Year performance for the parents and community. This exceptional tradition previously involved a community-supported series of performances with elaborate costumes and sets; choreographed dances, songs and skits; and a celebratory journal. On the date of the 2012 Lunar New Year there was no such evening performance, and teachers were left to create classroom events in an effort to soothe disappointed students.

73.   Upon information and belief, the above changes and other changes that are being implemented in plaintiff's absence are being done arbitrarily, capriciously and

unreasonably, in disregard of appropriate pedagogical knowledge and standards, contrary to the best interests of the children and School, and without appropriate consideration of their adverse effects.

74. The DoE's attempts to change and/or eliminate the bilingual programs at Shuang Wen are further evidence of the DoE's institutional animus against a predominantly Asian school with a bilingual and bicultural educational mission.

75. Plaintiff was not provided with notice prior to her removal from her position.

76. Plaintiff was not provided with a hearing or any other form of process prior to her removal from her position.

77. Plaintiff has not been provided with a hearing or any other form of process since her removal from her position.

78. Following plaintiff's removal from her position, Chancellor Walcott wrote an email regarding plaintiff, which was distributed to parents of Shuang Wen students and former students by email via the internet on or about July 6, 2011, and was posted by some of those parents on the public internet website http://www.saveshuangwen.net/ on or about the same date.

79. In that email, Chancellor Walcott stated, in part, "There are currently multiple ongoing investigations regarding Shuang Wen by the DOE's Office of Special investigations. These investigations involve, among other things, allegations of falsification of student records, improper enrollment practices, improper financial expenditures and practices, and improper fundraising....Virtually all the allegations being investigated implicate Principal Ling Ling Chou, and we concluded that she should be reassigned pending the outcome of the investigations."

80.    The statements made by Chancellor Walcott are false, stigmatizing statements that impugned plaintiff's professional competence and reputation, and called into question her good name, honor, honesty, integrity and capability, and her credentials as an educator and school principal.

81.    At and around the time of plaintiff's removal from her position as Principal, reports of her removal and the related allegations were widely publicized in print and broadcast media.

82.    In or about and between October and November 2010, reporters from the New York Times published an article stating "some parents have charged that Ms. Chou, the principal, admits Chinese students outside the lottery process and from outside the district, while discouraging local black and Hispanic parents."

83.    Upon information and belief, PRIMUS and BAPTISTE, who were quoted by the New York Times, were among the "parents" who provided this false information to reporters.

84.    Upon information and belief, the New York Times reporters also received information about the ongoing DoE investigations regarding Ms. Chou from DoE officials.

85.    The statements about Ms. Chou in the New York Times article, which were made by defendants to New York Times reporters for the purposes of publication, were false, stigmatizing statements that impugned plaintiff's professional competence and reputation, and called into question her good name, honor, honesty, integrity and capability, and her credentials as an educator and school principal.

86.    Upon information and belief, on or about October 12, 2011, a three-page flyer was distributed at the District One Community Education Counsel (CEC) meeting, which was a meeting open to the public.

20

87.     The first two pages of that flyer encouraged students to apply for admission to Shuang

Wen. The third page of the flyer stated in bold print: "If you ever tried to get your child

into Shuang Wen but were turned away by the former principal, you should demand that

your child be given a seat now to correct the discrimination against you in the past."[1] The

flyer went on, "You should write and describe what happened…" and instructed readers

to send their complaints to defendant Chancellor DENNIS WALCOTT, Acting Principal

of Shuang Wen Iris Chiu, Superintendent of District One Daniella Phillips, defendant

BOYER of the OSI, and Richard Condon of the SCI.

88.     Upon information and belief, there are 32 Community Education Councils (CECs) in

New York City, each representing a Community School District, and each with 11 voting

members, including nine parents of students in the district, and two members who are

appointed by the borough presidents. Upon information and belief, defendant PRIMUS

acted as 2nd Vice President of the District One CEC in 2009, but was no longer on the

CEC as of October 12, 2011.

89.     According to the DoE's website, quoted here in relevant part, "Community Education

Council members are consulted on many important matters…[t]heir meetings are open to

the public, and provide an opportunity for the community to be heard on educational

issues. The Councils are responsible for promoting the achievement of educational

standards and objectives relating to the instruction of students.…Council members must

hold quarterly meetings with PA/PTA officers as well as provide assistance to School

Leadership Teams. A Council member also has a voice in establishing educational policy

---

[1] A copy of the flyer was submitted as Exhibit A to Myron Beldock's Affirmation In Support of
Order to Show Cause why Motion to Intervene Should Not Be Granted.

for the district and in evaluating the community superintendents and the local

instructional superintendents assigned to the district. In addition, a Community Education

Council member is responsible for approving zoning lines submitted by the community

superintendent, consistent with the Chancellor's Regulations."

90.     The flyer distributed to the public on or about October 12, 2011 falsely and maliciously

stated that plaintiff had turned students away from the school in the past on the basis of

discrimination. As outlined above, there is no basis whatsoever for these false statements.

91.     The flyer distributed on or about October 12, 2011 therefore contained false, stigmatizing

statements that impugned plaintiff's professional competence and reputation, and called

into question her good name, honor, honesty, integrity and capability, and her credentials

as an educator and school principal.

## FIRST CAUSE OF ACTION
**Violations of Plaintiff's Rights under 42 U.S.C. § 1983, Civil Rights Act of 1871, and the
Fifth and Fourteenth Amendments of the United States Constitution
(Due Process and Equal Protection)**

92.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the

foregoing paragraphs as if fully set forth herein.

93.     Defendants, under color of state law, subjected plaintiff to the foregoing acts and

omissions in violation of 42 U.S.C. §1983 thereby depriving plaintiff of her rights,

privileges and immunities secured by the Fifth and Fourteenth Amendments to the United

States Constitution, including, without limitation, deprivation of the following

constitutional rights:

     a.    Freedom from deprivation of property without due process of law: Defendants

        have deprived plaintiff of property without due process of law:

    i.   by constructively discharging plaintiff, a tenured employee, by removing plaintiff from her position as Principal and relegating her to enforced idleness at a DoE office where she was and is assigned no meaningful work, without providing any form of process, including prior notice, a full and fair opportunity to rebut the allegations of wrongdoing, or a hearing; and

    ii.   by refusing to reinstate plaintiff to her position as Principal while investigations of alleged wrongdoing remain open for a grossly extended period and with no indication of when the investigations will be complete.

b.  <u>Freedom from deprivation of liberty without due process of law, including without limitation, freedom from deprivation of liberty without due process of law via a "stigma-plus" due process violation</u>: Defendants have deprived plaintiff of liberty without due process of law by making false, public, and stigmatizing statements about plaintiff in the above described communications, articles, and pamphlets; imposing a tangible and material state-imposed burden by removing plaintiff from her position as Principal; and failing to provide adequate, reasonably prompt process, including prior notice, a full and fair opportunity to rebut the allegations of wrongdoing, or a hearing.

c.  <u>The right to equal protection under the law</u>: As part of their campaign against the majority Chinese and Asian administration, student body, and parent body of Shuang Wen School, and its bicultural and bilingual mission, the

defendants have discriminated against Ms. Chou on the basis of race and/or

ethnicity by, among other things:

    i.  Removing Ms. Chou from her position as Principal based on

        investigations  conducted without the exercise of independent

        judgment and/or contrary to such independent judgment, which

        subjected Ms. Chou and the school to scrutiny to which no other

        similarly-situated, non-predominantly Asian school is subjected,

        including but not limited to scrutiny of its attendance records on an

        important Chinese holiday, the Lunar New Year, the conduct of its

        Lunar New Year celebratory performance, and the funding of its

        Mandarin language after school program;

   ii.  Subjecting Ms. Chou to unprecedented punitive action that targets the

        school's population, to which no other similarly situated non-

        predominantly Asian school is subject, without completing any

        investigations or making any findings of wrongdoing, including the

        action of removing Ms. Chou from her position as Principal;

  iii.  Adopting a scheme, of which the removal of Ms. Chou as Principal is

        a part, to encourage families to leave the school or intimidate them so

        they leave in order to change the racial balance of the school for

        purposes of political expediency;

  iv.  Adopting a scheme, of which the removal of Ms. Chou as Principal is

        a part, to change the bilingual and bicultural mission of the school;

     v.  Expressing racial animus against the school and Ms. Chou in the hostile, non-neutral language of the DoE's officials, investigators, and deputized parents, the Parent Defendants;

    vi.  Providing misleading, derogatory information about the school and Ms. Chou to the press before concluding investigations; and

   vii.  Acting in violation of the DoE's own regulations, while holding Ms. Chou, the school, families, teachers, administrators and volunteer parents to a standard not warranted by said regulations.

94.    Defendants acted under color of state law to deny Ms. Chou equal protection of the laws, and to discriminate on the basis of race, color and/or ethnicity in violation of 42 U.S.C. §1981 and 1983.

95.    The unlawful actions taken against Ms. Chou as alleged herein were taken in malicious, wilful, wanton, reckless disregard of and with reckless indifference to Ms. Chou's rights as guaranteed by 42 U.S.C. §1981 1983, and 2000d *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment.

96.    Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CAUSE OF ACTION
### Respondeat Superior (against DoE)

97.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.    Defendant DoE is liable for the actions of the individual defendants under the doctrine of *respondeat superior*.

## THIRD CAUSE OF ACTION
### New York State Constitutional Violations

99.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing

paragraphs as if fully set forth herein.

100.    Such conduct breached the protections guaranteed to plaintiff by the New York State

Constitution, Article I, §§ 6 and 11, including her rights to:

      a.   freedom from deprivation of property without due process of law, for the

         reasons outlined in paragraph 88(a);

      b.   freedom from deprivation of liberty without due process of law, for the

         reasons outlined in paragraph 88(b); and

      c.   equal protection under the laws, for the reasons outlined in paragraph 88(c).

101.    Defendants' deprivation of plaintiff's rights under the New York State Constitution

resulted in the injuries and damages set forth above.

## FOURTH CAUSE OF ACTION
### Discrimination against Plaintiff on the basis of race in violation of 42 U.S.C. §1981

102.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing

paragraphs as if fully set forth herein.

103.    Through such conduct, defendants discriminated against plaintiff on the basis of race

with respect to the right to make, perform, modify, and terminate contracts, and the

enjoyment of all benefits, privileges, terms and conditions of contractual relationships, by

removing her from her position as Principal of Shuang Wen.

104.    Defendants acted under color of state law.

105.   The unlawful actions taken against Ms. Chou as alleged herein were taken in malicious, wilful, wanton, reckless disregard of and with reckless indifference to Ms. Chou's rights as guaranteed by 42 U.S.C. §1981.

106.   As a direct and proximate result of defendants' acts, plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
### Conspiracy to deprive plaintiff of the equal protection of the law under 42 U.S.C. §1985

107.   Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

108.   Through such conduct, including their collaboration in making, investigating, and failing to investigate false complaints against plaintiff, and their collaboration in removing plaintiff from her position as Principal, the DoE, the Individual DoE Defendants, and the Parent Defendants conspired to deprive plaintiff of the equal protection of the laws.

109.   Defendants committed an act in furtherance of the object of such conspiracy by initiating and/or participating in wrongful and meritless investigations against plaintiff, and/or participating in plaintiff's removal from her position as Principal.

110.   As a direct and proximate result of defendants' acts, plaintiff has been injured in her person and property.

## SIXTH CAUSE OF ACTION
### Intentional discrimination against plaintiff on the basis of race, color, religion, and/or national origin in violation of Title VII of the Civil Rights Act of 1964, New York City Human Rights Law, and New York state law.

111.   Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

27

112.   Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, prohibits discrimination with respect to the terms, conditions and privileges of employment on the basis of race, color, religion and/or national origin.

113.   New York Human Rights Law, Executive Law § 296(1)(a), prohibits discriminatory treatment in employment on the basis of race, creed, color or national origin.

114.   New York Human Rights Law, Executive Law § 296(6) provides that it is an unlawful and discriminatory practice for a person to aid, abet, incite, compel or coerce a discriminatory act or to attempt to do so.

115.   Defendants' conduct toward plaintiff as described in the preceding paragraphs, including their removal of plaintiff from her position as principal for discriminatory reasons, constitutes discriminatory treatment (and/or aiding, inciting, or coercing discriminatory treatment) on the basis of race, color, creed, religion and/or national origin, as well as a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, the New York Human Rights Law, and New York state law.

116.   As a direct and proximate result of defendants' acts, plaintiff has been damaged.

**SEVENTH CAUSE OF ACTION**
**Defamation**

117.   Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

118.   Defendants made statements regarding plaintiff that were false, including without limitation the above quoted email by Chancellor Walcott sent on or about July 6, 2011, the above quoted statements made to New York Times reporters in or about October

and/or November 2010, and the above quoted flyer distributed at a District One CEC meeting on or about October 12, 2011.

119.    Such statements were published without privilege or authorization to at least one third party.

120.    Such statements, including Chancellor Walcott's email, the statements to New York Times reporters, and the October 12, 2011 flyer, constituted "slander per se" by implicating plaintiff in a serious crime and tending to injure plaintiff in her trade, business or profession.  The law therefore presumes that damages will result, and they need not be alleged or proven.

121.    As a direct and proximate result of defendants' acts, plaintiff has been damaged.

## EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

122.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

123.    The individual defendants, by the aforementioned acts, did commit extreme and outrageous conduct and thereby intentionally and/or recklessly caused plaintiff to suffer severe mental and emotional distress, pain and suffering, and damage to name and reputation.

124.    Defendants committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

## NINTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

125.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

29

126.   The individual defendants, by their aforementioned acts, did negligently cause plaintiff to suffer mental and emotional distress, pain and suffering, and damage to name and reputation.

### TENTH CAUSE OF ACTION
**Negligence of the Individual Defendants**

127.   Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

128.   The individual defendants, by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

      a.   Failed to perform their duties as a reasonably prudent and careful supervisor, employee, and/or investigator would have done under similar circumstances, and/ or

      b.   Carelessly and recklessly removed plaintiff from her position as Principal without reason.

129.   The negligent actions of the individual defendants directly and proximately caused plaintiff's injuries and damages set forth above.

### DEMAND FOR RELIEF

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all defendants:

    (a)   A declaration that the defendants' conduct violates the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§1981 and 1983;

    (b)   An order enjoining further violations of the rights of plaintiff;

30

(c)      An order requiring defendant DoE to immediately reinstate plaintiff to her former

position of Principal of Shuang Wen and enjoining defendants from

terminating, suspending, reassigning or otherwise removing plaintiff from her

position as Principal of Shuang Wen on the basis of the investigations

currently being pursued by the DoE and related offices regarding plaintiff

and/or Shuang Wen;

(d)      An order requiring defendant DoE to promulgate and adhere to reasonable

guidelines for the conduct and completion of future investigations;

(e)      An order requiring the defendants, including DoE and all its employees and

officials, to cease and desist making false accusations and statements regarding

plaintiff to the public, via the press or otherwise;

(f)      Compensatory damages for the emotional and economic injuries, and injuries to

name, career, and reputation, suffered by plaintiff by reason of defendants'

unlawful and unjustified conduct, in an amount just and reasonable and in

conformity with the evidence at trial;

(g)      Punitive damages against the individual defendants to the extent allowable by

law;

(h)      Such other and further relief, including costs and attorneys fees, as the Court

deems just and proper.

Dated: New York, New York
         February ____, 2012

BELDOCK LEVINE & HOFFMAN LLP

By:_____

Myron Beldock
Elizabeth Logemann
99 Park Avenue - Suite 1600
New York, New York 10016
(212) 490-0400

Attorneys for Ling ling Chou

32

## VERIFICATION

STATE OF NEW YORK          )
                                         : ss.:
COUNTY OF NEW YORK    )


Ling ling Chou, being duly sworn, deposes and says: I am the plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof and the same is true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.


_Ling ling Chou_
Ling ling Chou


Sworn to before me this
_10th_ day of February, 2012


_____
Notary Public

IRENE COHEN
Notary Public, State of New York
No. 01CO4877035
Qualified in Richmond County
Commission Expires 1/26/

IRENE COHEN
Notary Public, State of New York
No. 01CO4877035
Qualified in Richmond County
Commission Expires 1/26/15