UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 0 7 2013

-------------------------------------------------------------------X

GUAN N., ET AL.,

               Plaintiffs,

LING LING CHOU,

               Intervening Plaintiff,

      -v-

NYC DEPT. OF EDUCATION, ET AL.,

               Defendants.

-------------------------------------------------------------------X

11 Civ. 4299 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

       This action arises out of investigations into PS 184M, also known as the Shuang Wen

School, initiated by the New York City Department of Education (the "DOE"). The lawsuit was

commenced on June 24, 2011 but the complaint has since been twice amended. Plaintiffs are

three students who attend Shuang Wen, their parents, and a community organization. (Dkt.

#111) Defendants are the DOE and three of its officials (specifically, Chancellor Dennis

Walcott, Mr. Jamel Boyer, and Ms. Ajaiyeoba Tejumade), referred to herein as the "DOE

Defendants," as well as certain parents of Shuang Wen students (specifically, Lynn Berat,

Edward Primus, and Saultan Baptise, now deceased), referred to herein as the "Parent

Defendants." (*Id.*)

       Plaintiffs allege that the DOE Defendants and the Parent Defendants (collectively,

"Defendants") have discriminated against Shuang Wen because of its predominantly Asian staff

and student/parent body. (*Id.*) Plaintiffs contend that, as the result of Defendants' actions, they

have been deprived of their rights to procedural due process and equal protection and their right

to be free from unreasonable search and seizure, all in violation of 42 U.S.C. § 1983. Plaintiffs

1

also allege that Defendants' conduct violates the New York City Human Rights Law.

Ling Ling Chou, the former Principal at Shuang Wen, intervened as a plaintiff in this action in December 2011 and has once amended her complaint. She alleges that she was subjected to investigation and was removed from her position as Principal as the result of anti-Asian animus. (Dkt. #121) Ms. Chou claims that Defendants deprived her of her rights to procedural due process and equal protection in violation of 42 U.S.C. § 1983 and the New York State Constitution; that they conspired to deprive her of her right to equal protection in violation of 42 U.S.C. § 1985; that they discriminated against her in violation of 42 U.S.C. § 1981, Title VII, and the New York State and City Human Rights Laws; that they made defamatory statements about her; and that they both intentionally and negligently subjected her to emotional distress.

Before the Court are defendant Lynn Berat's motion to dismiss both Plaintiffs' Second Amended Complaint and Intervenor's Amended Complaint, (Dkt. # 128), the DOE Defendants' motion to dismiss Intervenor's Amended Complaint, (Dkt. # 126), and Plaintiffs' cross-motion for permission to proceed using only their first names and surname initials in public filings, (Dkt. #s 143, 147).

Ms. Berat moves to dismiss Plaintiffs' Second Amended Complaint on the grounds that Plaintiffs do not have Article III standing to pursue their § 1983 claims against her and that, in any event, they have failed to allege such claims adequately. Ms. Berat further asks the Court to decline to exercise jurisdiction over Plaintiffs' New York City Human Rights Law claim.

Ms. Berat and the DOE Defendants move to dismiss Ms. Chou's Amended Complaint on the grounds that she has failed to allege either a procedural due process or equal protection violation; that she has not adequately alleged that Defendants took any actions on the basis of

2

racial animus; and that she failed to file a claim with the Equal Employment Opportunity Commission (the "EEOC") and obtain a right to sue letter, as required to bring a Title VII claim in federal court.  While Ms. Berat only asks the Court to decline to exercise jurisdiction over Ms. Chou's state and city law claims, the DOE Defendants affirmatively move to dismiss these claims.  The DOE Defendants argue that Ms. Chou has failed to allege that they made any defamatory statements about her and that she has not alleged that they engaged in extreme and outrageous conduct as required for a claim of intentional or negligent infliction of emotional distress.

For the reasons that follow, the motions of Ms. Berat and the DOE Defendants are GRANTED in part and DENIED in part.

## I.    LEGAL STANDARD

In resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006).  However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). *See also Amidax Trading Group v. S. W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint containing nothing more than "a formulaic recitation of the elements of a cause of action" is insufficient, and the Court need not assume the truth of mere conclusory statements.  *Id.*

## II.   FACTS

### A.  Plaintiffs' Second Amended Complaint[1]

This action was initially commenced by David Lee and an organization called Children Parents First.  (Dkt. #1)  On July 15, 2011, Guan N., You G., and Parents for Children First filed an Amended Complaint.  (Dkt. # 34)  On January 25, 2012, Guan N., You G., Kelly P., David L., Juan H., Judith P., and Parents for Children First filed a Second Amended Complaint.  (Dkt. # 111)

The Second Amended Complaint alleges violations of 42 U.S.C. § 1983 and the New York City Human Rights Law by the DOE, various DOE officials, and various parents, including defendant Lynn Berat.  More specifically, Plaintiffs allege that they have been deprived of their right to equal protection of the laws, their right to due process, and their right to be free from unreasonable searches and seizures and that they have been discriminated against in violation of the New York City Human Rights Law.  Of all of the defendants, only Ms. Berat has moved to dismiss the Second Amended Complaint.  (Dkt. # 128)

Plaintiffs Guan N., You G., and Kelly P. are current students at Shuang Wen (the "Student Plaintiffs").  (P. Second Am. Cmplt. ¶¶ 9, 11, 12, 15)  Plaintiffs David L., Juan H., and

---

[1] The following facts are taken from Plaintiffs' Second Amended Complaint. (Dkt. # 111) Because only Ms. Berat moves to dismiss this action, the Court includes only the allegations related to Ms. Berat.

Judith P. are the respective parents of the Student Plaintiffs (the "Parent Plaintiffs"). (P. Second Am. Cmplt. ¶¶ 10, 13, 14, 16)  Parents for Children First is an unincorporated community organization whose purpose is to represent its members in combating racial and ethnic discrimination in the New York City public school system. (P. Second Am. Cmplt. ¶ 17)

Ms. Berat is the parent of at least one student at Shuang Wen. (P. Second Am. Cmplt. ¶ 23)  Ms. Berat is not alleged to have had any direct interactions with Plaintiffs. Rather, she is alleged to have made various complaints to the DOE (P. Second Am. Cmplt. ¶¶ 60, 108); to have "raided" the files of the Shuang Wen Parents Association (P. Second Am. Cmplt. ¶ 78); to have acquired a list of Shuang Wen students who lived outside of District One and to have shared that list with DOE, possibly in exchange for allowing her children to remain at Shuang Wen despite living outside of the district (P. Second Am. Cmplt. ¶¶ 95, 97); to have made a derogatory comment about people of Chinese descent (P. Second Am. Cmplt. ¶ 62); and to have taunted the child of the Co-President of the Parents Association (P. Second Am. Cmplt. ¶ 108).[2]

On March 20, 2012, Ms. Berat moved to dismiss Plaintiffs' Second Amended Complaint. (Dkt. #128)  Plaintiffs opposed the motion. (Dkt. # 135)  Plaintiffs also cross-moved for permission to proceed using only their first names and surname initials in public filings. (Dkt. #s 143, 147)

## B. Intervenor's Amended Complaint[3]

Intervenor, Ling Ling Chou, is the former Principal of Shuang Wen. (Int. Am. Cmplt. ¶ 2)  She brings this action against the DOE, Chancellor Dennis Walcott, Mr. Jamel Boyer, and Ms. Ajaiyeoba Tejumade (collectively, the "DOE Defendants"), and Ms. Lynn Berat, Mr. Edward Primus, and the Estate of Saultan Baptiste (collectively, the "Parent Defendants"). (Int.

---

[2] Neither the Co-President of the Parents Association, Ms. Gale Elston, nor her child is a party to this action.

[3] The following facts are taken from the Intervenor's First Amended Complaint. (Dkt. # 121)

Am. Cmplt. ¶ 3)

Chancellor Walcott is the Chancellor of the DOE and controls and oversees the DOE. (Int. Am. Cmplt. ¶ 12)  Mr. Boyer is a Confidential Investigator with the DOE's Office of Special Investigations and participated in some of the investigations that are at issue in Ms. Chou's Amended Complaint.  (Int. Am. Cmplt. ¶ 13)  Ms. Tejumade is a DOE employee who also participated in some of these investigations.  (Int. Am. Cmplt. ¶ 14)  Chancellor Walcott, Mr. Boyer, and Ms. Tejumade are referred to herein as the "Individual DOE Defendants."

Ms. Berat is the parent of approximately seven students who have been enrolled at Shuang Wen at various times.  (Int. Am. Cmplt. ¶ 16)  Mr. Primus is the parent of one former Shuang Wen student.  (Int. Am. Cmplt. ¶ 17)  Finally, Mr. Baptiste, now deceased, was the parent of approximately three students who either are or were enrolled at Shuang Wen.  (Int. Am. Cmplt. ¶ 18)

Shuang Wen is a highly regarded public elementary and middle school located in New York City.  (Int. Am. Cmplt. ¶¶ 2, 27, 29, 30-34 14)  Among its unique attributes is its English and Mandarin bilingual/bicultural instruction.  (Int. Am. Cmplt. ¶ 27)  Ms. Chou has been involved in the administration of Shuang Wen since its inception in 1996.  (Int. Am. Cmplt. ¶ 25)  However, on July 1, 2011, she was removed as Principal and reassigned to administrative duties at a DOE office.  (Int. Am. Cmplt. ¶¶ 38, 40)

Prior to Ms. Chou's removal, various parents at Shuang Wen, including the Parent Defendants, made complaints to the DOE about Shuang Wen and Ms. Chou's management of the school.  (Int. Am. Cmplt. ¶ 41)  The complaints included allegations that Ms. Chou was improperly admitting Chinese and/or Asian students in preference to students of other races; that the after-school and summer school Mandarin language program was improperly funded; that

6

there were financial improprieties related to the General School Fund and separate funds maintained by the Parents Association and Shuang Wen Academy Network and contributions made by parents and foundations; and that there had been falsification of school attendance records, believed to be focused on the date of the celebration of the Chinese Lunar New Year in 2011. (Int. Am. Cmplt. ¶ 49)  As a result of these complaints, the DOE and related bodies began investigating Shuang Wen and Ms. Chou.  (Int. Am. Cmplt. ¶ 47)  These investigations are the main reason provided by the DOE for removing Ms. Chou from her position as Principal of Shuang Wen.  (Int. Am. Cmplt. ¶ 50)  Ms. Chou denies all allegations of misconduct.  (Int. Am. Cmplt. ¶¶ 52, 57-58)

Ms. Chou alleges that racial or ethnic animus motivated the Parent Defendants to make complaints to the DOE.  (Int. Am. Cmplt. ¶ 44)  For example, she alleges that in or about October 2009, Ms. Berat told a Chinese-American parent that "Chinese people don't think.  They are incapable of thinking."  (Int. Am. Cmplt. ¶ 46(c))  She also alleges that between 2009 and 2010, Mr. Primus and Mr. Baptiste told another parent that they were filing numerous complaints about Ms. Chou, whom they wanted to "destroy."  (Int. Am. Cmplt. ¶ 42)

Ms. Chou further alleges that DOE officials have conspired with the Parent Defendants to remove Ms. Chou from her position as Principal.  (Int. Am. Cmplt. ¶ 61)  For example, Ms. Chou alleges that Ms. Tejumade supported allegations by Mr. Baptiste that the May 2010 Parents Association elections were rigged despite Ms. Tejumade  having overseen the election and having previously approved the results.  (Int. Am. Cmplt. ¶ 61(a))

She further alleges that when Mr. Baptiste and Mr. Primus challenged an $81,000 transfer from the Parents Association fund to the Shuang Wen Academy Network, DOE officials sided with Mr. Baptiste and Mr. Primus and allowed these parents to lead a meeting with a DOE

official and incoming Parents Association members regarding the transaction.  (Int. Am. Cmplt. ¶ 61(b))

Additionally, Ms. Chou alleges that on or about June 24, 2011, Ms. Tejumade  allowed Ms. Berat, Mr. Baptiste and Mr. Primus access to the Parents Association files and that the Parent Defendants were allowed to inspect the files without being supervised either by Ms. Tejumade  or by a member of the Parents Association.  (Int. Am. Cmplt. ¶ 61(c))

Finally, Ms. Chou alleges that in or about March 2011, Mr. Primus revealed to another parent that Mr. Boyer had assured him that Ms. Chou would not be at Shuang Wen in the fall, that the "ball" was "already in motion" and that everything that occurred in the interim was "just procedure."  (Int. Am. Cmplt. ¶ 61(d))  Family members of Mr. Baptiste also claimed to have learned the same from Mr. Boyer.  (Int. Am. Cmplt. ¶ 61(d))

In addition to alleging that the DOE Defendants conspired with the Parent Defendants, Ms. Chou also contends that defamatory statements have been made about her.  For example, she alleges that in or about October or November 2010, Mr. Primus and Mr. Baptiste provided information to the New York Times regarding allegations that Ms. Chou admitted Chinese students to Shuang Wen "outside of the lottery process and from outside of the district, while discouraging local black and Hispanic parents [from enrolling their children.]"  (Int. Am. Cmplt. ¶¶ 82, 83)

She also alleges that on or about July 6, 2011, following her removal from her position as Principal, Chancellor Walcott sent an email to parents of Shuang Wen students and former students indicating that investigations into Shuang Wen had been initiated and that because "[v]irtually all the allegations being investigated implicate[d]" Ms. Chou, Ms. Chou had been "reassigned pending the outcome of the investigations."  (Int. Am. Cmplt. ¶ 79)

8

Finally, Ms. Chou alleges that on or about October 12, 2011, a three-page flyer was distributed at the District One Community Education Council meeting, which was open to the public. (Int. Am. Cmplt. ¶ 86)  The third page of the flyer indicated that Ms. Chou had turned children away from Shuang Wen on a discriminatory basis and instructed readers to send their complaints to Chancellor Walcott, Acting Principal Iris Chiu, Superintendent of District One Daniella Phillips, Mr. Boyer, and Richard Condon of the City's Special Commission of Investigation. (Int. Am. Cmplt. ¶ 87)

In October 2011, Ms. Chou filed a motion seeking to intervene in this action. (Dkt. #74) That motion was opposed by Ms. Berat and the DOE Defendants. (Dkt. #s 87, 89)  On December 13, 2011, the Court granted Ms. Chou's motion to intervene, (Dkt. #105), and on December 15, 2011, Ms. Chou filed her Complaint, (Dkt. #106).  On February 14, 2012, Ms. Chou filed an Amended Complaint alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985, the New York State Constitution, Title VII, and the New York State and City Human Rights laws, and alleging defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Dkt. #121)  On March 19, 2012, the DOE Defendants moved to dismiss Ms. Chou's Amended Complaint. (Dkt. #126)  On March 20, 2012, Ms. Berat moved to dismiss Ms. Chou's Amended Complaint. (Dkt. #128)  Ms. Chou opposed both motions. (Dkt. #135)

## III.   DISCUSSION

Ms. Berat moves to dismiss both Plaintiffs' Second Amended Complaint and Ms. Chou's Amended Complaint. (Dkt. # 128)  The DOE Defendants' move only to dismiss Ms. Chou's Amended Complaint. (Dkt. # 126)  In Section A below, the Court addresses Ms. Berat's motion to dismiss Plaintiffs' Second Amended Complaint.  In Section B below, the Court turns to the motions of Ms. Berat and the DOE Defendants seeking dismissal of Ms. Chou's Amended

Complaint.

## A. All Federal Claims Contained in Plaintiffs' Second Amended Complaint Are Dismissed As Against Ms. Berat

Plaintiffs allege that Ms. Berat deprived them of their constitutional rights to equal protection of the laws, to procedural due process and to be free from unreasonable search or seizure, all in violation of 42 U.S.C. § 1983. They also allege that Ms. Berat interfered with their right to be free from discrimination in violation of the New York City Human Rights Law.

Ms. Berat moves to dismiss Plaintiffs' § 1983 claims for a number of reasons including (1) that Plaintiffs do not have Article III standing to pursue their § 1983 claims against her and (2) that even if they do have standing, Plaintiffs have failed to state a § 1983 claim against her. (Dkt. # 130) She also moves the Court to decline jurisdiction over Plaintiffs' City Human Rights Law claim. (*Id.*) For the following reasons, the Court finds that Plaintiffs do not have standing to pursue their § 1983 claims against Ms. Berat and that, even if they did, they have failed to state any such claims. However, because the DOE Defendants have not moved to dismiss the Second Amended Complaint, the Court will continue to exercise supplemental jurisdiction over Plaintiffs' City Human Rights Law claim as alleged against Ms. Berat.

### 1. Plaintiffs Have Failed to Allege Facts Sufficient to Find Standing

The Court first considers Ms. Berat's motion, pursuant to Rule 12(b)(1), seeking dismissal of Plaintiffs' § 1983 claims for failure to allege Article III standing. (Berat Mot. 7-9) Although Ms. Berat makes additional arguments for dismissal, a district court must generally assess Article III standing first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-101 (1998). If, as is the case in the instant action, standing is challenged on the basis of the pleadings, the Court accepts as true "all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Bldg. & Constr. Trades Council v. Downtown*

10

*Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006). However, the burden remains with the party

asserting jurisdiction to allege facts demonstrating standing. *See, e.g.*, *Johnson v. Bryson*, 851 F.

Supp. 2d 688, 699 (S.D.N.Y. 2012).

"[T]the irreducible constitutional minimum of standing contains three elements." *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The first of these requirements is that "the

plaintiff . . . ha[s] suffered an injury in fact – an invasion of a legally protected interest which is

(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.*

(internal quotes and citations omitted). The second requirement is that there "be a causal

connection between the injury and the conduct complained of – the injury has to be fairly

traceable to the challenged action of the defendant, and not the result of the independent action

of some third party not before the court." *Id.* (internal quotes and citations omitted). Finally, "it

must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Id.* at 561 (internal quotes and citations omitted).

The Court's task in assessing Plaintiffs' standing is complicated by the fact that there are

three categories of plaintiffs in the instant action who arguably raise four separate claims against

Ms. Berat, and neither Plaintiffs nor Ms. Berat address their standing arguments to particular

claims by particular plaintiffs. Nonetheless, the Court has assessed standing and concludes that

Plaintiffs have failed to allege facts sufficient to find that they have standing to pursue their §

1983 claims against Ms. Berat.

### a)  The Student Plaintiffs

The Court turns first to the three Student Plaintiffs named in the Second Amended

Complaint: Guan N., You G., and Kelly P. (Dkt. #111) The Second Amended Complaint does

not allege what particularized, concrete injury Guan N., You G., or Kelly P. has suffered as the

result of Ms. Berat's alleged conduct. Other than prefatory paragraphs alleging that Guan N. and

11

You G. are students at Shuang Wen, (P. Second Am. Cmplt. ¶¶ 9, 11, 12), the Second Amended Complaint makes *no further reference* to these plaintiffs.  The Second Amended Complaint contains similarly limited allegations regarding Kelly P. – the only allegation in which she is referenced relates to her detention by the DOE for questioning in March 2011.  (P. Second Am. Cmplt. ¶ 15)  However, the Second Amended Complaint contains no allegations that Ms. Berat caused Kelly P. to be detained and questioned.

Plaintiffs' opposition similarly fails to identify the injury that these particular plaintiffs are alleged to have suffered.  Instead, it argues, generally, that "Plaintiffs" have been deprived of "their right to attend school free of rampant discrimination, harassment, and threats to their safety."  (P. Opp. 14)  However, nowhere in the Second Amended Complaint is it alleged that Guan N., You G. or Kelly P. was personally subjected to discrimination, harassment, or threats, let alone discrimination, harassment or threats at the hands of Ms. Berat.

The Court might assume that that the generalized allegations in the Second Amended Complaint apply to Guan N., You G. and Kelly P.  In that case, they have allegedly suffered injuries as the result of: (i) Ms. Chou's reassignment (P. Second Am. Cmplt. ¶ 52); (ii) the cancelling, in April 2011, of the eighth grade class trip to China (P. Second Am. Cmplt. ¶ 119); (iii) the cancelling of enrichment programs, of plans to purchase and repair instruments for the school band, of scholarships, of translation services, of library improvements, of gym equipment repairs, and of visiting educators (P. Second Am. Cmplt. ¶¶ 121, 147(b)(ii)); and/or (iv) supply shortages (P. Second Am. Cmplt. ¶¶ 122, 147(b)(i)).  However, absent from Plaintiffs' opposition is any argument that Guan N., You G. or Kelly P. have a legally protected interest in these things.

To the extent the Student Plaintiffs' alleged injury is based on (i) a longstanding history

12

of funding Shuang Wen at a level below that of comparable schools (P. Second Am. Cmplt. ¶ 54); (ii) the questioning of students on March 4, 2011 by DOE officials without notice to parents (P. Second Am. Cmplt. ¶ 144(c)); and/or (iii) and the questioning of certain teachers on November 17, 2011, causing "classrooms full of children to be 'babysat' by office personnel" (P. Second Am. Cmplt. ¶ 145(d)), Plaintiffs have failed to allege that said injuries are fairly traceable to Ms. Berat's alleged conduct.

Finally, to the extent that the Student Plaintiffs have "a property right to public education," (P. Second Am. Cmplt. ¶¶ 166, 169), they fail to allege that they have been deprived of that right.

For the forgoing reasons, the Court concludes that Plaintiffs have failed to allege sufficient facts for the Court to conclude that the Student Plaintiffs have standing to pursue their equal protection, due process, or Fourth Amendment claims against Ms. Berat.

### b)  The Parent Plaintiffs

The Court turns next to the three Parent Plaintiffs named in the Second Amended Complaint: David L., Juan H., and Judith P.  (Dkt. #111)  David L. is the father of Guan N. and is a member of the Shuang Wen Parents Association.  (P. Second Am. Cmplt. ¶ 10)  Juan H. is the mother of You G. and is also a member of the Shuang Wen Parents Association and a former member of the Parents Association Executive Board.  (P. Second Am. Cmplt. ¶¶ 13, 14)  Finally, Judith P. is the mother of Kelly P., the mother of a former Shuang Wen student who was deprived of a class trip to China, a member of the Parents Association Executive Board, a contributor to the Shuang Wen General School Fund, and has actively fundraised on behalf of the Parents Association and the General School Fund.  (P. Second Am. Cmplt. ¶ 16)  Other than providing these background facts, the Second Amended Complaint makes no further reference to the Parent Plaintiffs.

There are no allegations that the Parent Plaintiffs were personally subjected to discrimination or harassment.

To the extent the Parent Plaintiffs allege that they have "a liberty interest in the custody and upbringing of their children," (P. Second Am. Cmplt. ¶¶ 165, 169), they have failed to allege that they have been deprived of that right as the result of Ms. Berat's alleged conduct.

To the extent the Parent Plaintiffs allege that they have "a property interest in using the funds contained in the Shuang Wen [Parents Association] account for the benefit of the students," (P. Second Am. Cmplt. ¶ 163), or "a property interest in the funds raised from parents' contributions and parent efforts to obtain grant monies for the School's GSF," (P. Second Am. Cmplt. ¶ 167), they cite no legal authority for this proposition. That is, they fail to plead or argue that they retained a property interest in monies that were donated to the Parents Association or to the General School Fund. Indeed, the case law indicates that in donating these funds, any property interest therein was relinquished. *See, e.g., Sickles v. Campbell Cnty.*, 501 F.3d 726, 733 (6th Cir. 2007) (in case involving gifts of funds from individuals to incarcerated relatives, due process claim related to prison's withholding of percentage of those funds was rejected because donor individuals relinquished any property interest in funds once they were gifted); *Browne v. Abdelhak*, No. 98 Civ. 6688, 2000 WL 1201889, at *2-4 (E.D. Pa. Aug. 23, 2000) (dismissing RICO claim for lack of standing on grounds that plaintiffs had failed to plead that they retained a right of reverter, right to modify, or right to redirect with respect to donated funds and, therefore, had failed to plead that they held a property interest in those funds); *Rawls v. Sundquist*, 929 F.Supp. 284, 287 (M.D. Tenn. 1996) (no property or liberty interest in equipment once it was donated).

Furthermore, the Parent Plaintiffs fail to allege that they were deprived of any right to

raise or use funds for the benefit of Shuang Wen students. Rather, the facts in the Second Amended Complaint indicate that the funds in the General School Fund and the Parents Association account were only temporarily frozen pending the outcome of investigations into possible financial improprieties involving those accounts. (P. Second Am. Cmplt. ¶¶ 55, 120) Furthermore, the Second Amended Complaint acknowledges that limitations on the use of funds in the Parents Association account and on the raising of new funds by the Parents Association were lifted on January 17, 2012. (P. Second Am. Cmplt. ¶ 121)

Finally, while the Parent Plaintiffs have a right to be free from unreasonable searches or seizures, they cite no authority for the proposition that this includes a right not to have *their children* subjected to questioning.[4] Indeed, even if they had such a right, David L. and Juan H. fail to allege that their children were ever questioned, and Judith P. fails to allege that Ms. Berat caused Kelly P. to be questioned.

For these reasons, the Court concludes that the Parent Plaintiffs have failed to allege that they have standing to pursue their equal protection, due process, or Fourth Amendment claims against Ms. Berat.

### c) Parents for Children First

Finally, the Court considers whether Parents for Children First has standing to assert § 1983 claims against Ms. Berat. Parents for Children First is an unincorporated community organization whose purpose is to represent it members in combating racial and ethnic discrimination in the New York City public school system. (P. Second Am. Cmplt. ¶ 17) "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as [the Second Circuit] ha[s] interpreted the

---

[4] Of course the children, individually, have a right to be free from unconstitutional searches or seizures. However, the question here is whether the Parent Plaintiffs have a legally protected interest in not having their children unreasonably questioned.

rights [that] § 1983 secures to be personal to those purportedly injured." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Consequently, the Court concludes that Parents for Children First does not have standing to pursue § 1983 claims against Ms. Berat.

*      *      *

In sum, Plaintiffs have failed to allege facts sufficient to conclude that they have standing to pursue their equal protection, due process, or Fourth Amendment claims against Ms. Berat.

### 2. Plaintiffs Have Failed to Allege That Ms. Berat Took Any Injurious Actions Under Color of State Law

In addition to arguing that Plaintiffs lack standing to bring their § 1983 claims against her, Ms. Berat also moves pursuant to Rule 12(b)(6) to dismiss Plaintiffs' § 1983 claims for failure to allege that she took any actions under color of state law. (Berat Mot. 12-16)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) the defendant's actions caused the plaintiff to suffer a deprivation of rights or privileges secured by federal law; and (2) the defendant engaged in these actions under the color of state law. 42 U.S.C. § 1983. Consequently, § 1983 liability cannot flow from private actions by private citizens, no matter how discriminatory or wrongful. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). However, where the private actor's conduct is "fairly attributable to the State," he or she may be held liable under § 1983. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982).

Ms. Berat moves to dismiss Plaintiffs' § 1983 claims on the grounds that Plaintiffs have failed to allege that any of her alleged actions occurred under color of state law. (Berat Mot. 12-16) Plaintiffs oppose Ms. Berat's motion contending that she was acting under color of state law because she both performed a public function (*i.e.*, control and/or management of Shuang Wen) and engaged in joint action with the DOE. (P. Opp. 18-19).

16

For the following reasons, the Court concludes that even if Plaintiffs' § 1983 claims were not dismissed for failure to plead Article III standing, they would be dismissed because (a) Plaintiffs have failed to allege that Ms. Berat performed a public function and (b) Plaintiffs have failed to allege that any joint action between Ms. Berat and the DOE caused Plaintiffs to be injured.

### a)  Public Function

Under the public function theory of state action, a private party may be considered a state actor if he or she performs a function that is "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974).  This is a difficult test to satisfy because "[w]hile many functions have been traditionally performed by governments, very few have been *exclusively* reserved to the State'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (emphasis added).  Plaintiffs allege that Ms. Berat performed a public function through her "willful participation in the regulation and control of Shuang Wen, normally the province of DOE." (P. Opp. 18)

Putting aside whether or not Plaintiffs have sufficiently alleged that Ms. Berat exercised such control, education is not considered to be the exclusive prerogative of the State.  *Powe v. Miles*, 407 F.2d 73, 80 (2d Cir. 1968) (noting, in the context of assessing state action under § 1983, that "[e]ducation has never been a state monopoly in this country."); *Hamlin ex rel. Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp. 2d 379, 386 (S.D.N.Y. 2005) (also noting, in the context of assessing state action under § 1983, that "[d]espite the importance of public education in American society, education is not considered to be exclusively the prerogative of the State." (citing *Rendell-Baker*, 457 U.S. at 842)).  Consequently, even assuming that Plaintiffs have sufficiently alleged that Ms. Berat participated in the management of Shuang Wen, they have not demonstrated that, in doing so, she performed an exclusively public function.

17

**b)  Joint Action**

Plaintiffs also contend that Ms. Berat acted under color of state law because her conduct was "entwined" with that of the DOE Defendants.  (P. Opp. 18-19)  That is, Plaintiffs' appear to allege that Ms. Berat, acting out of anti-Asian animus, made false complaints to the DOE, which in turn caused the DOE to take actions that violated the Plaintiffs' constitutional rights.

Despite Plaintiffs' reference to "entwinement," this more closely resembles a joint action argument.  Although the mere furnishing of information to government officials is insufficient to demonstrate joint action, *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999), some courts in this Circuit have held that if a private party defendant makes an intentionally false complaint to a government official with the intent to deprive the plaintiff of his or her constitutional rights, the defendant may be held liable under § 1983 pursuant to the joint action theory, *see Weintraub v. Board of Educ. of City of New York*, 423 F. Supp. 2d 38, 57 (E.D.N.Y. 2006).  However, even if the Court were to adopt this view of joint action, dismissal of Plaintiffs' § 1983 claims against Ms. Berat would nonetheless be warranted because Plaintiffs have failed to allege that this joint action caused them any injury.  *See Bernshtein v. City of New York*, No. 11–0545, 2012 WL 4040215, at *3 (2d Cir. Sept. 14, 2012) ("As in all § 1983 cases, the plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury.").

The only false complaint that Ms. Berat is alleged to have made to the DOE is her claim that Gale Elston, Co-President of the Parents Association, verbally abused Ms. Berat's children. (P. Second Am. Cmplt. ¶ 108; 134(b))[5]  More importantly, the only alleged effect of this false

---

[5] The Court notes that in opposing Ms. Berat's Rule 12(b)(6) motion, Plaintiffs rely, in part, on facts not contained in the Second Amended Complaint.  When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court may properly exclude the additional material and decide the motion on the complaint alone. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).  Consequently, the Court considers only those facts contained in the Second Amended Complaint.

complaint is the DOE's initiation of an investigation into the incident. (P. Second Am. Cmplt. ¶ 108) Plaintiffs do not allege that they personally suffered any injury as the result of this investigation. Thus, even if the Court assumes that Ms. Berat made this complaint to the DOE based on anti-Asian animus, and even if the Court accepts that this is sufficient to plead joint action, such conduct could not support a § 1983 claim by Plaintiffs because Plaintiffs have failed to allege that the DOE's investigation of Ms. Elston caused them any injury.

*       *       *

In sum, Plaintiffs' have failed to allege that they were injured by any actions taken by Ms. Berat under color of state law. Consequently, even if Plaintiffs had Article III standing to pursue their § 1983 claims against Ms. Berat, the Court would dismiss these claims pursuant to Rule 12(b)(6).

### 3. The Court Will Continue To Exercise Supplemental Jurisdiction Over Plaintiffs' New York City Human Rights Law Claim

Having dismissed Plaintiffs' § 1983 claims against Ms. Berat, the Court turns to Ms. Berat's request that the Court decline to exercise supplemental jurisdiction over Plaintiffs' New York City Human Rights Law claim.[6] (Berat Mot. 20) A court may only decline to exercise supplemental jurisdiction over state law claims when no federal claims "remain against *any* defendant in the action." *Johnson v. City of New York*, 669 F. Supp. 2d 444, 453 (S.D.N.Y. 2009) (emphasis added). The DOE Defendants have answered Plaintiffs' Second Amended Complaint and, as a result, Plaintiffs' federal claims against those parties remain. Consequently, the Court will continue to exercise supplemental jurisdiction over Plaintiffs' New York City Human Rights Law claim.[7]

---

[6] This is the only argument that Ms. Berat makes regarding dismissal of this claim.

[7] In her motion, Ms. Berat also argues that Plaintiffs' Second Amended Complaint should be dismissed because the

## B.  **Intervenor's Amended Complaint Is Dismissed In Part**

Having addressed Ms. Berat's motion to dismiss Plaintiffs' Second Amended Complaint, the Court turns to the respective motions of the DOE Defendants and Ms. Berat seeking dismissal of Ms. Chou's Amended Complaint.

### 1.  **Law of the Case**

As an initial matter, Ms. Chou asserts that this Court may not entertain the instant motions to dismiss her Amended Complaint because they simply reiterate arguments already raised in opposing her motion to intervene. (Chou Opp. 1-3)  According to Ms. Chou, the Court implicitly rejected Defendants' various arguments for dismissal when it granted Ms. Chou's motion to intervene.  (*Id.*)[8]  She contends that this must be treated as the law of the case.  (*Id.*)

The DOE Defendants disagree, noting not only that the standard for intervention is distinct from the standard for dismissal under Rule 12(b)(6), but also that the Court neither issued a written opinion nor made a finding on the record suggesting that it had decided any of the issues raised by the DOE Defendants in opposing Ms. Chou's motion to intervene.  (DOE Reply 2-3)

Although Ms. Berat does not address this issue in her reply papers, the Court nonetheless considers the applicability of the law of the case doctrine to both Ms. Berat's motion to dismiss and the DOE Defendants' motion to dismiss.  The Court agrees with the DOE Defendants that the law of the case doctrine is not relevant here.

"[L]aw of the case is concerned with the extent to which law applied in a decision at one

---

Parent Plaintiffs failed to use their full names in the complaint. (Berat Mot. 10-11)  Plaintiffs not only oppose this ground for dismissal but also cross-move for permission to proceed using their first names and surname initials. (P. Opp. 20-22; Dkt. #s 143, 147)  In light of the need to preserve the confidentiality of the Student Plaintiffs, who are minors, and the fact that use of the Parent Plaintiffs' full names would undermine this objective, Plaintiffs' cross-motion to proceed using their first names and surname initials is GRANTED.

[8] The previous motion was decided by Judge Holwell before this case was transferred to the undersigned.

stage of litigation becomes the governing principle in later stages of the same litigation."
*Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999). "As most commonly defined,
the doctrine posits that when a court decides upon a rule of law, that decision should continue to
govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S.
605, 618 (1983). However, "[t]he doctrine of law of the case comes into play only with respect
to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n. 18 (1979). "[Q]uestions
that have not been decided do not become law of the case merely because they *could* have been
decided." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F. Supp. 203, 209 (S.D.N.Y.
1997) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice &
Procedure § 4478 at 789 (1981)) (emphasis added). Thus, the law of the case doctrine is
inapplicable if the Court rendered no decision on the given issue. *In re Lynch*, 430 F.3d 600, 604
(2d Cir. 2005).

    Here, the record contains no decision, oral or written, assessing the legal adequacy of Ms.
Chou's pleadings. Moreover, no such assessment was required in order to grant Ms. Chou's
motion to intervene – the standard for permissible intervention is simply that the intervenor's
claims "share with the main action a common question of law or fact." Fed. R. Civ. P.
24(b)(1)(B). Indeed, the Second Circuit has recognized that a district court may dismiss an
intervenor's claims even after permitting intervention. *See Stewart-Warner Corp. v.
Westinghouse Elec. Corp.*, 325 F.2d 822, 827 (2d Cir. 1963) ("We place no emphasis upon the
fact that the district judge first permitted Canadian to intervene and later granted the motion to
dismiss and strike parts of a counterclaim which it had earlier received. What the court could do
at the time when intervention was sought it could do later, especially as there is no showing that
any prejudice resulted from later reconsideration of the question."). In light of the forgoing, the

Court finds that the grant of Ms. Chou's motion to intervene has no bearing on the instant motions.

The Court now turns to Defendants' particular arguments for dismissal.

### 2. Ms. Chou's Claims Pursuant to 42 U.S.C. § 1983

As the Court has indicated, to state a claim under 42 U.S.C. § 1983, a claimant must allege two elements: (1) the defendant's actions caused the claimant to suffer a deprivation of rights or privileges secured by the Constitution; and (2) the defendant engaged in these actions under the color of state law. 42 U.S.C. § 1983. Ms. Chou's first cause of action primarily alleges that, in violation of § 1983, Defendants deprived her of her due process and equal protection rights secured by the Fifth[9] and Fourteenth Amendments to the United States Constitution. (Int. Am. Cmplt. ¶ 93) More specifically, Ms. Chou alleges that she was deprived of property without due process when she was reassigned away from her position as Principal; that she was deprived of liberty without due process when certain defendants made false and stigmatizing statements about her to the public; and that she was deprived of her right to equal protection of the laws when, because of racial and/or ethnic animus, she was investigated and reassigned. (*Id.*) The DOE Defendants and Ms. Berat move to dismiss each of these claims.

### a) Procedural Due Process – Deprivation of Property Interest

Ms. Chou alleges that she was deprived of a property interest without due process when she was removed from her position as Principal and reassigned to a DOE office. (Int. Am. Cmplt. ¶ 93(a)) The DOE Defendants and Ms. Berat move to dismiss this iteration of Ms.

---

[9] The Fifth Amendment regulates due process violations by federal, not state or municipal, actors. *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Because Ms. Chou alleges due process violations by municipal actors (*i.e.*, the DOE Defendants) and purported municipal actors (*i.e.*, Ms. Berat), the Fourteenth Amendment, rather than the Fifth Amendment, applies to these claims. *Id.* To the extent that Ms. Chou has raised due process claims under the Fifth Amendment, these claims are dismissed.

Chou's § 1983 claim on the grounds that Ms. Chou has not alleged the deprivation of a property interest. (DOE Mot. 6; DOE Reply 4-6; Berat Mot. 11-12)  Putting aside whether Ms. Chou has a property interest in her position as Principal at Shuang Wen, her property-based procedural due process claim must be dismissed because she has not alleged a constitutionally sufficient deprivation.

Ms. Chou has failed to allege a sufficient deprivation because she has not alleged either that her reassignment resulted in a diminution of her compensation or that she was forced to quit or retire.  In *O'Connor v. Pierson*, 426 F.3d 187, 199-200 (2d Cir. 2005), the Second Circuit held that the plaintiff, a tenured public school teacher forced to take sick leave and therefore restricted from performing his usual job duties, had not been deprived of his property interest because he continued to receive full compensation during his leave.  The Second Circuit concluded that absent financial harm from the forced leave, the plaintiff had failed to establish a constitutionally significant deprivation.  *Id.  O'Connor* is regularly cited by courts in this Circuit for this rule. *See, e.g.*, *MacFall v. City of Rochester*, No. 10–4638, 2012 WL 3871414, at *1 (2d Cir. Sept. 7, 2012); *Adams v. New York State Educ. Dept.*, 752 F. Supp. 2d 420, 453 (S.D.N.Y. 2010); *Ramberran v. Dellacona,* No. 07 Civ. 304, 2008 WL 905217, at *1–2, *4 (E.D.N.Y. Mar. 31, 2008); *Thomas v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 09 Civ. 5167, 2011 WL 1225972, at *9 (E.D.N.Y. Mar. 29, 2011).

Ms. Chou does not allege that she has suffered any pecuniary harm as the result of her reassignment.  Instead, she alleges that her reassignment constitutes "constructive discharge," and contends that under a constructive discharge theory, she need not allege pecuniary loss.  (Int. Am. Cmplt. ¶ 93(a); Chou Opp. 10-11)  Reliance on constructive discharge does not, however, save Ms. Chou's claim because "[t]o establish a 'constructive discharge,' a plaintiff must show

that the employer deliberately made his working conditions so intolerable that he was forced into an involuntary resignation," *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993), and Ms. Chou has not alleged that she resigned, quit or retired. *See also Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011) ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.").

Citing *Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir. 1984) and a footnote in *O'Connor* referencing *Parrett*, Ms. Chou argues that she need not allege that she left her employment in order to establish constructive discharge. (Chou Opp. 10-11) However, neither *Parrett* nor the footnote in *O'Connor* supports this conclusion.

In *Parrett*, the plaintiff brought suit pursuant to § 1983 alleging that the defendants violated his procedural due process rights when they imposed on him such intolerable working conditions that he was forced to retire. 737 F.2d at 694. The Seventh Circuit was asked whether § 1983 liability can flow from a claim of constructive discharge as opposed to outright termination, *id.* 692, and the Seventh Circuit held that it could, *id.* at 694-95. Contrary to Ms. Chou's assertion, the Seventh Circuit did not have occasion to opine on whether a plaintiff states a constitutionally sufficient deprivation if she not only continues to be employed by the defendant, but also continues to be fully compensated.

Indeed, in a section of *Parrett* not mentioned by Ms. Chou, the Seventh Circuit "expressed doubt whether a lateral transfer, involving no loss of pay, could ever be sufficient deprivation to violate the Fourteenth Amendment," noting that "[a] contrary conclusion would subject virtually all personnel actions by state and local government agencies to potential federal damage suits under 42 U.S.C. § 1983 – a breathtaking expansion in the scope of that already far-

24

reaching statute, and one remote from the contemplation of its framers." *Id.* at 693. Thus, *Parrett* is in fact in accord with the Second Circuit's decision in *O'Connor*.

Ms. Chou also attempts to make hay out of a footnote in *O'Connor* in which the Second Circuit, citing *Parrett*, acknowledged that constructive discharge is a viable theory of § 1983 due process liability. 426 F.3d at 200 n. 5. In the footnote, the Second Circuit noted that a teacher on involuntary paid sick leave might have a procedural due process claim if he could make out a claim of constructive discharge – he need not wait to be forced onto unpaid leave. *Id.* However, the footnote does not purport to modify the requirements for establishing constructive discharge. Rather, it suggests exactly what *Parrett* held – if the plaintiff can establish that he was forced to resign, quit or retire because of intolerable working conditions, then he may seek relief pursuant to § 1983 and need not wait to have his employment or compensation terminated in order to state a due process claim.[10]

In sum, Ms. Chou has failed to cite any case law for the proposition that a constitutionally sufficient deprivation can be established if the plaintiff, although reassigned, continues to be employed and suffers no pecuniary loss. Because the case law in this Circuit indicates a contrary rule, and because Ms. Chou does not allege that she has been discharged, has retired, resigned or quit or that her compensation has been reduced, she has failed to state a property based procedural due process claim. Consequently, this claim is DISMISSED.

---

[10] Although not raised by either the DOE Defendants or Ms. Berat, it should be noted that the Second Circuit has held that in the context of constructive discharge (as opposed to ordinary firing), pre-deprivation process is impractical and not constitutionally required so long as the state provides meaningful post-deprivation process. *Giglio v. Dunn*, 732 F.2d 1133 (2d. Cir. 1984); *Hoover v. Cnty. of Broome*, 340 Fed. Appx. 708, 711 (2d Cir. Aug 03, 2009). Importantly, Article 78 proceedings provided for by New York state law satisfy this constitutional standard. *Id. See also Mulcahey v. Mulrenan*, No. 06 Civ. 4371, 2008 WL 110949, at *7 (S.D.N.Y. Jan. 03, 2008) ("[W]here - as in the instant case - plaintiff is not terminated from employment, but instead claims that defendants coerced his retirement, a pre-dismissal hearing is neither required nor practical, and an Article 78 proceeding is a sufficient post-deprivation remedy."). Thus, even if Ms. Chou had alleged a constitutionally sufficient deprivation, her procedural due process claim would nonetheless fail because she has available to her sufficient post-deprivation process in the form of an Article 78 proceeding.

Furthermore, in light of Ms. Chou's failure to adequately allege a property based procedural due process claim, any related municipal liability claim against the DOE is also DISMISSED. *See MacFall*, 2012 WL 3871414, at *2 (finding district court properly dismissed municipal liability claim where plaintiff failed to adequately allege an underlying constitutional violation).

### b) Procedural Due Process – Deprivation of Liberty Interest

The Court turns next to Ms. Chou's allegation that she was deprived of a liberty interest in her reputation without due process of law – a so-called "stigma-plus" claim. (Int. Am. Cmplt. ¶ 93(b)) To state a stigma-plus claim, Ms. Chou must allege the utterance of a statement injurious to her reputation that is capable of being proved false and that she claims is false – the stigma – and some tangible and material state-imposed burden or the deprivation of some tangible interest or property right – the plus – without adequate process. *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 158 (2d Cir. 2010); *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006). Furthermore, because "the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). Consequently, a defamatory statement is not actionable under § 1983 unless it can be attributed to a person acting under color of state law. *See Doe v. Dept. of Public Safety*, 271 F.3d 38, 48 (2d Cir. 2001) ("To meet the stigma element of his claim, then, the plaintiff is required to show a stigmatizing statement about him *made or to be made under color of law* that is capable of being proved true or false.") (emphasis added), *rev'd on other grounds*, 123 S.Ct. 1160 (2003).

Although it is unclear from Ms. Chou's First Amended Complaint which statements

underlie the "stigma" portion of the claim, her opposition papers identify three allegedly

stigmatizing statements contained in the Amended Complaint. (Chou Opp. 15)  The DOE

Defendants move to dismiss Ms. Chou's stigma-plus claim on the grounds that these statements

are insufficient to support such a claim.[11]  (DOE Mot. 7, 16-17; Reply 6-7)  The Court agrees.

 First, Ms. Chou points to Chancellor Wolcott's alleged July 6, 2011 email to Shuang

Wen parents and former students stating: "There are currently multiple ongoing investigations

regarding Shuang Wen by the DOE's Office of Special investigations.  These investigations

involve, among other things, allegations of falsification of student records, improper enrollment

practices, improper financial expenditures and practices, and improper fundraising . . . . Virtually

all the allegations being investigated implicate Principal Ling Ling Chou, and we concluded that

she should be reassigned pending the outcome of the investigations."  (Chou Opp. 15; Int. Am.

Cmplt. ¶¶ 78-79)

 Chancellor Wolcott correctly contends that these statements cannot serve as the basis for

Ms. Chou's stigma-plus claim because she has not plausibly alleged that they were false.  (DOE

Mot. 7, 16-17; DOE Reply 6-7).  Indeed, in her Amended Complaint, Ms. Chou acknowledges

not only that DOE and related bodies instituted investigations into Shuang Wen, but also that

these investigations centered on the allegations referenced in Chancellor Wolcott's email.  (Int.

Am. Cmplt. ¶¶ 47-49)  Consequently, Chancellor Walcott's alleged July 6, 2011 email cannot

serve as the basis for Ms. Chou's stigma-plus claim.

 Next, Ms. Chou relies on statements allegedly made by Mr. Primus and Mr. Baptiste to

the New York Times.  (Chou Opp. 15; Int. Am. Cmplt. ¶¶ 82-83)  However, Mr. Primus and Mr.

Baptiste are alleged to be parents of children at Shuang Wen, (Int. Am. Cmplt. ¶¶ 17-18), and

Ms. Chou fails to allege that either Mr. Primus or Mr. Baptiste was cloaked in the authority of

---

[11] The Court notes that Ms. Berat is not alleged to have made any of these statements.

the state at the time of their alleged statements.  Thus, as the DOE Defendants note, Ms. Chou

has failed to allege that these statements are attributable to a DOE Defendant (*i.e.*, a government

actor).  (DOE Reply 7)  Absent an allegation that Mr. Primus and Mr. Baptiste were acting under

color of state law, these statements are insufficient to state a stigma-plus claim.

Ms. Chou's third and final stated basis for her stigma-plus claim is a flyer distributed at a

District One Community Education Council meeting ("the CEC flyer"), which allegedly stated

that Ms. Chou had turned children away from Shuang Wen on a discriminatory basis.  (Chou

Opp. 15; Int. Am. Cmplt. ¶¶ 86-87)  However, as indicated by the DOE Defendants, Ms. Chou

makes no allegations at all regarding who drafted or distributed the flyer.  (DOE Mot. 17)  She

therefore fails to allege that the statement in the CEC flyer is attributable to any defendant, let

alone a defendant acting under color of state law.  Consequently, the statement in the CEC flyer

cannot serve as the basis for Ms. Chou's stigma-plus claim.

In sum, Ms. Chou has failed to allege a single statement sufficient to support a stigma-

plus claim.  Consequently, Ms. Chou's stigma-plus claim is DISMISSED, and any related

municipal liability claim against the DOE is also DISMISSED.

### c)  Equal Protection

Finally, Ms. Chou alleges that she was deprived of her right to equal protection of the

laws when she was reassigned away from her position as Principal and was subjected to

investigation and scrutiny on account of her race and/or ethnicity.  (Int. Am. Cmplt. ¶ 93(c))

Both the DOE Defendants and Ms. Berat move to dismiss this claim.  The Court addresses each

of their arguments in turn.

### i.    The DOE Defendants

The DOE Defendants move to dismiss Ms. Chou's equal protection claim for a number

of reasons, including Ms. Chou's failure to adequately allege that she was treated differently than similarly situated individuals or that her treatment was motivated by racial or ethnic animus. (DOE Mot. 10; DOE Reply 7-8)

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). A plaintiff may pursue an equal protection claim under a number of theories, including that the defendants treated her differently than a similarly situated individual as a result of intentional or purposeful discrimination or that the defendants applied a facially neutral law or policy to her in an intentionally discriminatory race-based manner. *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006). For the reasons that follow, the Court finds that Ms. Chou has not adequately alleged an equal protection claim under either of these theories.

The first theory, commonly referred to as "selective enforcement," requires Ms. Chou to show "both (1) that [she was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race . . . ." *Brisbane v. Milano*, 443 Fed. Appx. 593, 594 (2d Cir. Oct. 19, 2011). It is not sufficient, however, for Ms. Chou to simply intone the elements of a selective enforcement claim. *See Iqbal*, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In particular, the Court need not accept conclusory statements that Ms. Chou was treated differently than similarly-situated non-Asian principals when the Amended Complaint neither identifies these individuals nor contains facts indicating that they are in fact similarly situated. *See Dellutri v. Vill. of Elmsford*, No. 10 Civ. 01212, 2012 WL 4473268, at *15 (S.D.N.Y. Sept. 28, 2012); *Leary v. Civil Service Employees Ass'n*, No. 11 Civ. 716, 2012 WL 1622611, at *9 (S.D.N.Y. May 09, 2012). Because Ms.

29

Chou's Amended Complaint does not contain facts indicating that she was treated differently from similarly situated individuals, the Court finds that Ms. Chou has not adequately plead a selective enforcement equal protection claim.

This does not, however, dispose of Ms. Chou's equal protection claim in its entirety because "[a] plaintiff alleging an equal protection claim under a theory of discriminatory application of the law . . . generally need not plead or show the disparate treatment of other similarly situated individuals." *Pyke v. Cuomo*, 258 F.3d 107, 108-109 (2d Cir. 2001). Thus, the Court must separately assess whether Ms. Chou has sufficiently alleged discriminatory application of the law by any of the DOE Defendants.

Constitutional claims of invidious discrimination require the plaintiff to "plead that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676. That is, the plaintiff must allege that the defendant acted "because of" a protected characteristic (*e.g.*, race or ethnicity), and must plead sufficient factual matter to "nudge [her] claims of invidious discrimination across the line from conceivable to plausible." *Id.* at 677, 680. Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. Thus, the Second Circuit has held that "liability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose." *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 676). Ms. Chou's allegations against Chancellor Walcott, Ms. Tejumade , and Mr. Boyer fail to satisfy this standard.

To the extent Ms. Chou alleges that Chancellor Wolcott was responsible for instituting or overseeing the investigations of Shuang Wen and Ms. Chou or for reassigning Ms. Chou, she

fails to allege that Chancellor Wolcott engaged in this conduct *because of* Ms. Chou's race or ethnicity. The totality of Ms. Chou's factual allegations concerning Chancellor Walcott is that he sent the July 6, 2011 email discussed *supra* p. 26. (Int. Am. Cmplt. ¶¶ 78-79) The email, as transcribed in the Amended Complaint, summarizes the complaints underlying the investigations of Shuang Wen, notes that many of the complaints involve Ms. Chou, and indicates that Ms. Chou has been reassigned pending the outcome of the investigations. (Int. Am. Cmplt. ¶ 79) The email contains nothing indicating racial animus or discriminatory intent; indeed, it contains no reference to either race or ethnicity. Moreover, as the Court has already indicated, Ms. Chou has not even plausibly alleged that the content of the email is false. *See supra* p. 26. Thus, Ms. Chou has failed adequately to allege that Chancellor Wolcott acted with discriminatory purpose.

Ms. Chou's equal protection claim against Ms. Tejumade also fails. The Amended Complaint contains only two factual allegations specifically relating to Ms. Tejumade: (1) she "supported" allegations by Mr. Baptiste that the May 2010 Parents Association election was rigged despite Ms. Tejumade having overseen the election and having approved the results and (2) that she allowed Ms. Berat, Mr. Baptiste and Mr. Primus unsupervised access to the files of the Parents Association. (Int. Am. Cmplt. ¶¶ 61(a), 61(c)). These facts do not raise a plausible inference that Ms. Tejumade harbored racial or ethnic animus.

Finally, the Court turns to Ms. Chou's equal protection claim against Mr. Boyer, who allegedly participated in the investigations that followed from the complaints made against Ms. Chou and Shuang Wen. (Int. Am. Cmplt. ¶ 13). Ms. Chou's Amended Complaint contains only two factual allegations concerning Mr. Boyer, neither of which is sufficient to raise a plausible inference of racial or ethnic animus.

Ms. Chou first alleges that Mr. Boyer interviewed her, at which time he questioned her

31

about some of her interactions with Ms. Berat and indicated that he had previously interviewed Ms. Berat. (Int. Am. Cmplt. ¶ 43)  The Court is at a loss to understand how this conduct gives rise to an inference of racial animus or discriminatory motive.  Indeed, it seems inevitable that Mr. Boyer would interview the complaining parents in the course of investigating the complaints made against Ms. Chou and Shuang Wen.

Ms. Chou also alleges that in approximately March 2011, Mr. Boyer told Mr. Primus and family members of Mr. Baptiste "that Chou would not be at the School in the fall, that the 'ball' was 'already in motion,' and that everything that occurred in the interim was 'just procedure.'" (Int. Am. Cmplt. ¶ 61(d))  While a generous reading of these facts might suggest that Ms. Chou's July 1st reassignment was anticipated as early as March 2011, they are insufficient to raise a plausible inference either that Mr. Boyer personally harbored racial or ethnic animus or that his investigation of acknowledged complaints against Ms. Chou and Shuang Wen was motivated by such animus.

In sum, Ms. Chou fails to allege that Chancellor Wolcott, Ms. Tejumade  or Mr. Boyer took any actions with respect to Ms. Chou based on racial or ethnic animus.  Consequently, Ms. Chou's equal protection claim is DISMISSED as against these defendants, and any related municipal liability claim against the DOE is also DISMISSED.

### ii.    Ms. Berat

Having addresses Ms. Chou's equal protection claim as alleged against the DOE Defendants, the Court turns to Ms. Chou's equal protection claim as alleged against Ms. Berat.

Ms. Berat contends that she cannot be held liable under § 1983 because she is a private citizen.  (Berat Mot. 12-15)  As previously indicated, it is indeed black letter law that § 1983 does not apply to private actions by private citizens, no matter how discriminatory or wrongful.

*See, e.g., Am. Mfrs. Mut. Ins. Co.*, 526 U.S. 40.  However, while "[p]rivate parties are generally not amenable to suit under § 1983 because they are not state actors, . . . they may be liable where . . . they are jointly engaged with state officials in a conspiracy to deprive the [claimant] of [her] constitutional rights." *Bhatia v. Yale Sch. of Med.,* 347 Fed. Appx. 663, 664 (2d Cir. Sept. 30, 2009) (internal citations omitted).  Ms. Chou contends that Ms. Berat may be liable as a state actor under § 1983 because she conspired with the DOE Defendants to deprive Ms. Chou of her right to equal protection.[12]  (Chou Opp. 33)  Ms. Berat moves to dismiss this claim on the grounds that Ms. Chou has not sufficiently alleged such a conspiracy.  (Berat Mot. 12-15)

"To state a claim against a private [individual] on a § 1983 conspiracy theory, the complaint must allege facts demonstrating that the private [individual] acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d 307at 324 (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).  Thus, to state a § 1983 equal protection claim against Ms. Berat, Ms. Chou must allege that Ms. Berat acted in concert with the DOE Defendants to deprive Ms. Chou of her right to equal protection (*i.e.,* to initiate investigations of Ms. Chou and/or to reassign her based on her race or ethnicity).

However, a § 1983 conspiracy claim against a private party defendant cannot be maintained when the underlying constitutional violation is inadequately pled.  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  As discussed *supra* § 2.c.i., Ms. Chou's equal protection claim is insufficiently alleged in that she has failed to plead facts sufficient to give rise to a plausible inference that the DOE Defendants initiated investigations of Ms. Chou or reassigned her because of racial or ethnic animus.  In light of this failure, Ms. Chou cannot

---

[12] Ms. Chou makes this argument with respect to her constitutional rights more generally but, given that her property-based procedural due process claim has been dismissed, and that Ms. Berat is not allegedly responsible for any of the statements underlying Ms. Chou's stigma-plus claim, the Court considers this argument solely with respect to Ms. Chou's equal protection claim.

maintain a § 1983 conspiracy claim against Ms. Berat. In light of the forgoing, Ms. Chou's §

1983 equal protection claim as alleged against Ms. Berat is DISMISSED.

### 3.  Ms. Chou's New York State Constitutional Claims

Having addressed Ms. Chou's § 1983 claims, the Court turns to her third cause of action,

which alleges due process and equal protection violations under the New York State

Constitution. (Int. Am. Cmplt. ¶¶ 99-101)  These claims mirror her federal due process and

equal protection claims, discussed and dismissed *supra* § 2.  "The New York State Constitution's

guarantees of equal protection and due process are virtually coextensive with those of the United

States Constitution."  *Coakley v. Jaffe,* 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999).  *See also*

*Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1991) ("[T]he breadth of

coverage under the equal protection clauses of the federal and state constitutions is equal.");

*Algarin v. New York City Dept. of Correction*, 460 F. Supp. 2d 469, 478 (S.D.N.Y. 2006) ("The

New York State Constitution's guarantee of due process is virtually coextensive with that of the

U.S. Constitution.").  Accordingly, Ms. Chou's due process and equal protection claims under

the New York State Constitution are dismissed for the same reasons that her federal due process

and equal protection claims are dismissed.  *See Hayut v. State Univ .of New York*, 352 F.3d 733,

754-55 (2d Cir. 2003) (dismissing state constitutional claims where they mirrored § 1983 claims

that had been dismissed).

### 4.  Ms. Chou's Claims Pursuant to 42 U.S.C. § 1981

Ms. Chou's fourth cause of action alleges that Defendants discriminated against her on

the basis of race in violation of 42 U.S.C. § 1981.  (Int. Am. Cmplt. ¶¶ 103-05)  A single

paragraph in Ms. Chou's first cause of action makes the same allegation.  (Int. Am. Cmplt. ¶ 94)

42 U.S.C. § 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of

the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  § 1981 therefore bans racial discrimination with respect to employment.  *Patterson v. Cnty. Of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).

The Individual DOE Defendants move to dismiss Ms. Chou's § 1981 claim for a number of reasons, including Ms. Chou's failure to adequately allege that they engaged in any conduct related to her investigation or reassignment because of racial animus.  (DOE Mot. 12-13)  Ms. Berat moves to dismiss Ms. Chou's § 1981 claim on the grounds that she has failed to allege that Ms. Berat caused Ms. Chou to be reassigned.[13]  (Berat Mot. 17-18)  The Court considers each of these arguments in turn.

### a)  The Individual DOE Defendants

To survive a motion to dismiss, a complaint alleging a violation of § 1981 "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994).  It is essential to a § 1981 claim "that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (citations omitted). *See also Olivera v. Town of Woodbury*, 281 F. Supp. 2d 674, 684 (S.D.N.Y. 2003) ("§ 1981 claims, like those under the Equal Protection Clause, must be based on intentional conduct.")  (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania United Engineers & Constructors, Inc.*, 458 U.S. 375, 391 (1982)).  Ms. Chou's

---

[13] Ms. Berat in fact moves to dismiss Ms. Chou's discrimination claims more generally, rather than specifically addressing Ms. Chou's § 1981 claim.  However, because Ms. Chou's § 1981 claim is a racial discrimination claim, the Court assumes that Ms. Berat intended her arguments to be applied here.

Amended Complaint fails to meet this standard with respect to the Individual DOE Defendants.

As discussed *supra* § 2.c.i., Ms. Chou has failed to plead facts sufficient to raise a plausible inference that Chancellor Wolcott, Ms. Tejumade  or Mr. Boyer took any steps related to Ms. Chou's investigation or reassignment because of racial animus.

To the extent Ms. Chou argues that she has sufficiently alleged racial animus on the part of these defendants by alleging that they "worked closely" with the parent defendants who allegedly held racial animus, she provides no legal support for such a proposition.  (Chou Opp. 25)

Furthermore, even if the Court could, as a legal matter, infer racial animus on the part of the Individual DOE Defendants based on the fact that they "worked closely" with the parent defendants, Ms. Chou has failed to plead facts sufficient to make such an inference plausible. The only race-based comment allegedly made by a parent defendant was made to another parent and not to any of the Individual DOE Defendants.  (Int. Am. Cmplt. ¶ 46(c))  Indeed, the Amended Complaint contains no factual, non-conclusory allegations that the Individual DOE Defendants were aware of the Parent Defendants' alleged racial animus.  In sum, Ms. Chou has not sufficiently alleged that the Individual DOE Defendants intentionally discriminated against Ms. Chou on the basis of race.

### b)  Ms. Berat

Ms. Berat also moves to dismiss Ms. Chou's § 1981 claim, contending that Ms. Chou has not adequately alleged that Ms. Berat caused Ms. Chou to be reassigned.  (Berat Mot. 17-18) Ms. Chou disagrees, arguing that Ms. Berat is alleged to have made numerous false allegations to the DOE, which caused the DOE to remove Ms. Chou from her position as Principal at Shuang Wen.  (Chou Opp. 32)  For the following reasons, the Court finds that Ms. Chou has adequately

alleged a § 1981 claim against Ms. Berat.

According to Ms. Chou, Ms. Berat falsely accused her of inviting students who lived outside of the district to attend Shuang Wen and communicated these allegations to the DOE. (Int. Am. Cmplt. ¶¶ 41, 43) Ms. Berat allegedly made these false complaints because of racial animus. (Int. Am. Cmplt. ¶¶ 44) As evidence of such animus, Ms. Chou cites an alleged incident in October 2009 during which Ms. Berat "told a Chinese-American parent that 'Chinese people don't think. They are incapable of thinking.'" (Int. Am. Cmplt. ¶ 46(c)) Finally, Ms. Chou alleges that the DOE initiated investigations of Ms. Chou and Shuang Wen and eventually removed Ms. Chou from her position as Principal based, in part, on Ms. Berat's allegations. (Int. Am. Cmplt. ¶¶ 43, 47, 50)

Ms. Berat asserts that these allegations are insufficient because, even assuming that the October 2009 incident occurred, it was nothing more than a "stray remark" by a nondecisionmaker and is too removed in time from Ms. Chou's reassignment to demonstrate that Ms. Berat was reassigned because of the remark. (Berat Mot. 17-18) Ms. Berat's arguments assume that Ms. Chou's § 1981 claim rests either on the allegation that Ms. Chou was reassigned because of Ms. Berat's October 2009 remark or on the allegation that DOE officials reassigned Ms. Chou out of their own racial animus.[14] However, Ms. Chou states a separate theory of § 1981 liability against Ms. Berat: that Ms. Berat, motivated by racial animus, made complaints to the DOE, which complaints caused Ms. Chou to be reassigned. (Chou Opp. 32) In other words,

---

[14] The case law cited by Ms. Berat reveals as much. *See De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 643 (S.D.N.Y. 2011) (in Title VII action, intent of employer cannot be established through comment by nondecisionmaker); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (in ADEA action, stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (close timing of protected activity and adverse employment action can establish retaliatory motive); *Campbell v. Alliance Nat. Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (in Title VII action, intent of employer cannot be established through stray remark by a non-decisionmaker); *Posner v. Sprint/United Management Co.*, 478 F. Supp. 2d 550, 559 (S.D.N.Y. 2007) (in ADEA action, isolated remark by non-decisionmaker insufficient to establish discriminatory motive).

Ms. Berat interfered with Ms. Chou's employment for racially discriminatory reasons. The October 2009 remark is meant to demonstrate Ms. Berat's racial animus. Ms. Berat neither addresses, nor challenges this theory of § 1981 liability in her papers. Thus, the Court assumes, without deciding, that it is legally cognizable.[15]

Because Ms. Chou has alleged sufficient facts to state a § 1981 claim against Ms. Berat under this theory, Ms. Berat's motion to dismiss Ms. Chou's § 1981 claim is DENIED.

### 5.  Ms. Chou's § 1985 Claim Is Dismissed

In her fifth cause of action, Ms. Chou alleges that the DOE Defendants, Ms. Berat, Mr. Primus, and Mr. Baptiste conspired, in violation of 42 U.S.C. § 1985, to deprive her of her right to equal protection of the laws. (Int. Am. Cmplt. ¶¶ 107-10)  She further alleges that the defendants engaged in various acts in furtherance of the conspiracy, including initiating and/or participating in investigations of Ms. Chou and/or participating in her removal from her position as Principal. (Int. Am. Cmplt. ¶¶ 107-10)

To state a claim under 42 U.S.C. § 1985, a claimant must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000).  Furthermore, the conspirators must be motivated by racial animus. *Id.*  If the claimant has failed to allege deprivation of a federal right, the § 1985 claim must be dismissed. *See, e.g.*, *O'Bradovich v. Vil. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004)

---

[15] This assumption is supported by the Second Circuit's decision in *Michaelidis v. Berry*, No. 12-151, 2012 WL 5476823 (2d Cir. Nov. 13, 2012), which at least suggests that §1981 liability may lie for a defendant who, acting out of racial animus, induces another to terminate a contract with the plaintiff. In *Michaelidis*, the plaintiffs brought a § 1981 claim against the defendants for inducing the plaintiffs' landlord to terminate their lease. 2012 WL 5476823, at *1.  In upholding a grant of summary judgment in favor of the defendants, the Second Circuit did not reject this theory of liability out of hand. *Id.*  Rather, it held that summary judgment was appropriate because the plaintiffs had failed to demonstrate that the defendants caused the landlord to terminate the lease. *Id.*

("In the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985."). Because Ms. Chou has failed adequately to allege that she was deprived of her right to equal protection, *see supra* § 2.c., her § 1985 claim is DISMISSED.

### 6.  There Is No Respondeat Superior Liability Under 42 U.S.C. §§ 1981, 1983 or 1985

Ms. Chou's second cause of action alleges that "DOE is liable for the actions of the individual defendants under the doctrine of *respondeat superior*." (Int. Am. Cmplt. ¶ 98) However, as the DOE correctly notes, (DOE Mot. 15), there is no *respondeat superior* liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-5 (1978). Indeed, there is no *respondeat superior* liability under § 1981 or § 1985 either. *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989); *Zherka v. City of New York*, 459 Fed. Appx. 10, 12 (2d Cir. Jan. 19, 2012); *Patterson*, 375 F.3d at 225. Consequently, any such claims are DISMISSED.

Although Ms. Chou acknowledges that there is no *respondeat superior* liability under § 1983, she asserts that the DOE may nonetheless be liable for an official policy causing Ms. Chou's constitutional injury. (Chou Opp. 27-28) More specifically, she contends that because "Chancellor [Walcott] was knowingly involved in the violation of her constitutional rights[, h]er federal claims against DOE should not be dismissed." (Chou Opp. 28) A municipal entity like the DOE may be held liable under §§ 1981, 1983, and 1985 if the claimant's constitutional injury resulted from municipal policy. *Monell*, 436 U.S. at 694; *Brown v. City of N.Y.,* 306 F. Supp. 2d 473,478 (S.D.N.Y. 2004); *Patterson*, 375 F.3d 206 at 226. However, as noted *supra* pp. 25-26, a municipal liability claim cannot survive a motion to dismiss if the underlying constitutional claim is insufficiently pled. *See MacFall*, 2012 WL 3871414, at *2. Because Ms. Chou's §

39

1981, § 1983 and § 1985 claims against Chancellor Walcott have been dismissed for failure to plead a constitutional violation, any related municipal liability claims are also DISMISSED.

### 7.  Ms. Chou's Title VII Claim is Dismissed

In her sixth cause of action, Ms. Chou alleges that the DOE Defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964.  (Int. Am. Cmplt. ¶¶ 112, 115)  The DOE Defendants move to dismiss Ms. Chou's Title VII claim on the grounds that she failed to file a claim with the EEOC and obtain a right to sue letter – a point which Ms. Chou concedes.  (Mot 11; Opp. 22, n. 5)  Because both filing a timely charge with the EEOC and obtaining a right to sue letter are prerequisites to bringing a Title VII claim in federal court, *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001); 42 U.S.C.A. § 2000e–5, Ms. Chou's Title VII claim is DISMISSED.

### 8.  Ms. Chou's State and City Law Claims

The Court turns finally to Ms. Chou's claims under New York state and city law.  As an initial matter, both the DOE Defendants and Ms. Berat move this Court to decline to exercise supplemental jurisdiction over these claims.  (DOE Mot. 15; Berat Mot. 20)  However, because Ms. Chou's § 1981 claim remains against Ms. Berat and because Plaintiffs' claims remain against the DOE Defendants, the Court will continue to exercise supplemental jurisdiction over Ms. Chou's state and city law claims.

Because Ms. Berat makes no further arguments regarding dismissal of these claims, they remain to the extent they are alleged against her.

The DOE Defendants, however, move for their dismissal, which the Court agrees is warranted.

### a) Ms. Chou's Claims Under the New York State Human Rights Law and the New York City Human Rights Law Are Dismissed

In her sixth cause of action, Ms. Chou alleges that the DOE Defendants violated the New York State Human Rights Law and the New York City Human Rights Law by removing her from her position as Principal, or aiding and abetting her removal, based on her race and/or ethnicity. (Int. Am. Cmplt. ¶¶111-116)

The elements of an employment discrimination claim under the State and City Human Rights Laws are the same as the elements of an employment discrimination claim under Title VII and § 1981. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir. 2000); *Gant v. Wallingford Bd. Of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999).[16] The claimant must show (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009).

The DOE Defendants move to dismiss Ms. Chou's State and City Human Rights Law claims for a number of reasons, including Ms. Chou's failure to plead facts sufficient to give rise to a plausible inference of discriminatory intent. (DOE Mot. 12-13) For the reasons previously discussed, *supra* § 2.c.i., the Court agrees. Ms. Chou's State and City Human Rights Law claims are DISMISSED as alleged against the DOE Defendants.

### b) Ms. Chou's Defamation Claim

In her seventh cause of action, Ms. Chou alleges that Defendants made defamatory remarks about her. (Int. Am. Cmplt. ¶¶ 117-121) In pleading this claim, Ms. Chou relies on the same statements underlying her stigma-plus § 1983 claim, discussed *supra* § 2.b. (Int. Am.

---

[16] Retaliation claims under the City Human Rights Law are the exception to this rule – they are evaluated under a more liberal standard. *See Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27, 33-34 (1st Dep't 2009). However, Ms. Chou has not pled a retaliation claim.

Cmplt. ¶ 118)  The DOE Defendants move to dismiss this claim for reasons particular to each alleged defamatory statement.  (DOE Mot. 16-18; DOE Reply 6-7)

First, the DOE Defendants contend that Chancellor Wolcott's July 6, 2011 email to Shuang Wen parents and former students cannot support a claim for defamation because Ms. Chou has not plausibly alleged that the statements are false.  Under New York law, "[d]efamation is defined as a false statement that exposes a person to public contempt, ridicule, aversion or disgrace."  *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 460 (2002).  "A party alleging defamation must allege that the statement is false."  *Id.*  As the Court has already indicated, s*upra* § 2.b, Ms. Chou has not plausibly alleged that the statements contained in Chancellor Wolcott's July 6, 2011 email are false.  Consequently, any defamation claim based on this email is dismissed.

Next, the DOE Defendants argue that statements allegedly made by Mr. Primus and Mr. Baptiste to the New York Times cannot support a defamation claim against the DOE because neither Mr. Primus nor Mr. Baptiste is a DOE employee.  The Court agrees. Vicarious liability for defamation requires an agency relationship between the defendant and the maker of the defamatory statement.  *Oparaji v. Atl. Container Line*, No. 07 Civ. 2134, 2008 WL 4054412, at *11 (S.D.N.Y. 2008).  However, Ms. Chou does not allege that Mr. Primus or Mr. Baptiste were DOE employees or that they acted as DOE's agents at the time they made the alleged statements. Because Ms. Chou has failed to allege any such relationship between the DOE and either Mr. Primus or Mr. Baptiste at the time they made the alleged statements, any defamation claim against the DOE based on these statements is dismissed.

Finally, the DOE Defendants assert that statements contained in the CEC Flyer cannot support a defamation claim against them because Ms. Chou fails to allege that any of the

Individual DOE Defendants, or any other DOE employee or agent, was responsible for the statements contained therein. The Court agrees. "While a defamation claim need not be pled *in haec verba*, a complaint alleging defamation is only sufficient if it adequately identifies the purported communication, and an indication of who made the statement, when it was made, and to whom it was communicated." *Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at *10 (S.D.N.Y. Apr.16, 2007) (citation omitted). Ms. Chou fails to allege that any of the Defendants were responsible for drafting or distributing the CEC flyer. Consequently, any defamation claim based on the CEC flyer must be dismissed as inadequately pled.

For the forgoing reasons, Ms. Chou's defamation claim is DISMISSED as against the DOE Defendants.

### c) Ms. Chou's Claim For Intentional Infliction of Emotional Distress

In her eighth cause of action, Ms. Chou alleges that Defendants intentionally caused her severe emotional distress. (Int. Am. Cmplt. ¶¶ 122-124) In order to state a claim for intentional infliction of emotional distress, Ms. Chou must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121 (1993)). As a cause of action, intentional infliction of emotional distress is "extremely disfavored . . . [and] routinely dismissed on pre-answer motion." *House v. Wackenhut Srvs., Inc.*, No. 10 Civ. 9476, 2011 WL 6326100, at *4 (S.D.N.Y. Dec. 16, 2011). The DOE Defendants move to dismiss this claim on the grounds that Ms. Chou has failed to allege either extreme and outrageous conduct or severe emotional distress. (DOE Mot. 18-19) Because Ms. Chou has failed to allege that the DOE Defendants engaged in extreme and outrageous conduct, this claim is dismissed.

43

"Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "The bar is extremely high, and this highly disfavored cause of action is almost never successful." *Zick v. Waterfront Com'n of New York Harbor*, No. 11 Civ. 5093, 2012 WL 4785703, at *6 (S.D.N.Y. Oct. 4, 2012) (internal quotes and citations omitted). "In fact, the Court of Appeals of New York has noted that, before 1993, every IIED [intentional infliction of emotional distress] claim before it had 'failed because the alleged conduct was not sufficiently outrageous.'" *Id.* (quoting *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011), which in turn quoted *Howell,* 81 N.Y.2d at 122). "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Zick*, 2012 WL 4785703, at *6 (quoting *Stuto*, 164 F.3d at 827).

The only conduct alleged in the Amended Complaint that might possibly satisfy this standard is Ms. Chou's subjection to investigation and reassignment based on racial animus;[17] however, the Court has already found that Ms. Chou has failed to plausibly allege that the DOE Defendants engaged in any conduct on this basis. *See supra* § 2.c.i. Having failed to allege that the DOE Defendants engaged in extreme and outrageous conduct, this claim is DISMISSED as against the DOE Defendants.

### d) Ms. Chou's Claim For Negligent Infliction of Emotional Distress

Ms. Chou's ninth cause of action alleges negligent infliction of emotional distress. (Int. Am. Cmplt. ¶¶ 125-26) Like a claim of intentional infliction of emotional distress, a claim of

---

[17] Even then, courts within this Circuit have generally held that "[a]dverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims absent a deliberate and malicious campaign against the plaintiff." *Gioia v. Forbes Media, LLC*, No. 09 Civ 6114, 2011 WL 4549607, at *12 (S.D.N.Y. Sept. 30, 2011) (citing cases).

negligent infliction of emotional distress requires that the alleged conduct be extreme and

outrageous. *Berrios v. Our Lady of Mercy Med. Ctr.*, 799 N.Y.S.2d 452, 454 (1ˢᵗ Dep't 2005).

For the same reasons discussed in the preceding section, Ms. Chou has failed to allege that the

DOE Defendants engaged in extreme and outrageous conduct.  Consequently, this claim is also

DISMISSED as against the DOE Defendants.

## IV.   CONCLUSION

For the forgoing reasons, it is hereby ORDERED that:

- Plaintiffs' § 1983 claims are dismissed as alleged against Ms. Berat;

- Ms. Chou's § 1983 claims are dismissed as alleged against all DOE defendants (including the Individual DOE Defendants and the DOE) and Ms. Berat;

- Ms. Chou's New York State constitutional claims are dismissed as alleged against all DOE defendants (including the Individual DOE Defendants and the DOE) and Ms. Berat;

- Ms. Chou's § 1981 claim is dismissed as alleged against all DOE defendants (including the Individual DOE Defendants and the DOE);

- Ms. Chou's § 1985 claim is dismissed as alleged against all DOE defendants (including the Individual DOE Defendants and the DOE) and Ms. Berat;

- Ms. Chou's Title VII claim is dismissed as alleged against all DOE defendants (including the Individual DOE Defendants and the DOE) and Ms. Berat;

- Ms. Chou's New York State and City Human Rights Law claims, her defamation claim, and her intentional and negligent infliction of emotional distress claims are dismissed as alleged against all DOE defendants (including the Individual DOE Defendants and the DOE);

- And Plaintiffs' cross-motion to proceed using their first names and surname initials, (Dkt. #s 143, 147), is granted.

IT IS FURTHER ORDERED that counsel for all parties appear for a scheduling

conference before the Court on **January 25, 2013** at **11:15 AM** in **Courtroom 17B** of the

United States District Court for the Southern District of New York, 500 Pearl Street, New York,

New York.  Counsel are directed to confer with each other prior to the conference regarding

settlement and each of the other subjects to be considered at a Fed. R. Civ. P. 16 conference.

Additionally, in accordance with the Court's Individual Rules, the parties are hereby ORDERED

to submit via e-mail (NathanNYSDChambers@nysd.uscourts.gov) a Proposed Civil Case

Management Plan and Scheduling Order in PDF format **no later than nine days before the**

**initial pretrial conference**.  The parties shall use this Court's form Proposed Case Management

Plan and Scheduling Order available at http://nysd.uscourts.gov/judge/Nathan.

    SO ORDERED.


Dated: January 7, 2013
       New York, New York                    _____
                                              ALISON J. NATHAN
                                              United States District Judge